*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0327p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

MICHAEL DANOTUS YOUNG,
  *Defendant-Appellant.*

No. 08-1394

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 07-00102-001—Paul Lewis Maloney, Chief District Judge.

Argued: June 11, 2009

Decided and Filed: September 4, 2009

Before: SUTTON and GRIFFIN, Circuit Judges; LIOI, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Richard Charles Gould, LAW OFFICES, Grand Rapids, Michigan, for Appellant. Jennifer L. McManus, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Richard Charles Gould, LAW OFFICES, Grand Rapids, Michigan, for Appellant. Jennifer L. McManus, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

LIOI, D. J., delivered the opinion of the court, in which GRIFFIN, J., joined. SUTTON, J. (pp. 12-18), delivered a separate opinion concurring in part, dissenting in part and concurring in the judgment.

_____

[*] The Honorable Sara Lioi, United States District Judge for the Northern District of Ohio, sitting by designation.

———————————

**OPINION**

———————————

SARA LIOI, District Judge.  Defendant Michael Young ("Young") appeals his conviction for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), as well as his 15-year sentence under the Armed Career Criminal Act (ACCA).  For the reasons that follow, we affirm both the conviction and the sentence.

**I.**

On December 15, 2006, at approximately 1:15 a.m., police officers in Grand Rapids, Michigan observed Young asleep in a car in a public parking lot known for numerous shootings and other criminal activity.  Based on the high-crime area, the hour of the night, and Young's unlawful loitering in a city parking lot, one of the officers decided to approach the car to question Young.

When questioned, Young denied having anything illegal on his person, but his repeated "furtive hand movements" over his jacket pocket suggested that he was hiding contraband or a weapon; the officer asked Young to step out of the car.  Young complied and informed the officer that he had a gun.  Around the same time, the officer's partner yelled that Young had an outstanding arrest warrant.  The officer arrested Young and discovered a gun on his person, which Young admitted was his.

Young was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  He filed a motion to suppress the gun as the fruit of an unconstitutional search and seizure, which the district judge denied.  On November 5, 2007, without a written plea agreement, Young changed his plea to guilty, and the district judge sentenced him to the minimum 15-year sentence pursuant to ACCA.

**II.**

Young argues that the district court erred in denying his motion to suppress the gun. Sixth Circuit law is clear, however, that a guilty-pleading defendant may not appeal an adverse pre-plea ruling on a motion to suppress evidence unless he has preserved the right to do so in a written plea agreement under Criminal Rule 11(a)(2). *United States v. Herrera*, 265 F.3d 349, 351 (6th Cir. 2001); Fed. R. Crim. P. 11(a)(2). The writing requirement may only be excused if the defendant "made it clear that he wished to preserve his right to appeal, the government acknowledged that he could appeal, and the court accepted that." *United States v. Mastromatteo*, 538 F.3d 535, 543 (6th Cir. 2008). The justification for the exception is that even if "the exact format of Rule 11(a)(2)" is not followed, its "intent and purpose have been fulfilled" where the defendant "ma[kes] it very clear that he intended to reserve his right to appeal the denial of [a] suppression motion[]." *Id.*

In this case, it is undisputed that there was no written plea agreement. Further, neither Young nor his counsel clearly expressed an intention to preserve the suppression issue on appeal. Indeed, during sentencing, the district judge acknowledged on three occasions that the only issue preserved for appeal was the ACCA enhancement, and neither Young nor his counsel objected otherwise.[1] Thus, Young is barred from raising the suppression issue on appeal.

**III.**

Young also challenges his 15-year mandatory minimum sentence. ACCA imposes a 15-year mandatory minimum sentence when a defendant convicted of § 922(g) has three or more prior convictions qualifying as "violent felonies" or "serious

---

[1]As reported in the sentencing transcript, the district judge stated:

(1) "There is a reservation of appeal on the Court's previous ruling regarding the application of fleeing and eluding to the armed career criminal statute which is attendant to Mr. Young's sentencing";

(2) "There is a preservation of *a* legal issue for appeal in this case" (emphasis added); and

(3) "And indeed, you and your lawyer have preserved your right to appeal this Court's ruling on the application of your fleeing and eluding conviction to the armed career criminal statute."

drug offenses."  18 U.S.C. § 924(e)(1).  Young concedes that two of his prior offenses qualify as serious drug offenses, but he argues that his 1997 conviction for fleeing and eluding, second offense under Michigan law does not qualify as a violent felony under ACCA.

The fleeing-and-eluding statute under which Young was convicted states, in relevant part, as follows:

> A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop, and who willfully fails to obey that direction by increasing the speed of the vehicle, extinguishing the lights of the vehicle, or otherwise attempting to flee or elude the police or conservation officer, is guilty of a misdemeanor, and shall be punished by imprisonment for not less than 30 days nor more than 1 year . . . .

Mich. Comp. Laws § 257.602a3(1) (1996).  If a person violates that provision within five years of a prior fleeing-and-eluding conviction, the offense is punishable as a felony by a term of imprisonment up to and including four years.  *Id.* at § 257.602a3(4).

A "violent felony" under ACCA is an offense that is punishable by a term of imprisonment exceeding one year and either (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," or (2) "is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B).  Young's offense was punishable by a term of imprisonment exceeding one year, as he was convicted for a second fleeing and eluding offense within five years; thus, Young's fleeing-and-eluding conviction satisfies the threshold requirement of ACCA.  Young's conviction, however, does not have as an element the use, attempted use, or threatened use of force, nor is it a type of burglary, arson, extortion, or an offense involving the use of explosives.  Thus, the issue before the Court is whether Young's conviction falls under ACCA's "residual clause"—that is, whether it "involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).

An offense falls within ACCA's residual clause if it (1) poses a serious potential risk of physical injury to others; and (2) involves the same kind of purposeful, violent, and aggressive conduct as the enumerated offenses of burglary, arson, extortion, or offenses involving the use of explosives. *Begay v. United States*, -- U.S. --, 128 S. Ct. 1581, 1586 (2008); *United States v. Ford*, 560 F.3d 420, 421 (6th Cir. 2009). In conducting that inquiry, we are to use the "categorical approach," meaning that we examine only "whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision." *James v. United States*, 550 U.S. 192, 202 (2007) (emphasis in original). Further, we only consider the behavior underlying the offense as it is generally or ordinarily committed, *Chambers v. United States*, -- U.S. --, 129 S. Ct. 687, 690 (2009); *James*, 550 U.S. at 208, "not in terms of how an individual offender might have committed [the offense] on a particular occasion," *Begay*, 128 S. Ct. at 1584.

Under the categorical approach of *James*, *Begay*, and *Chambers*, we hold that Young's conviction qualifies as a violent felony under ACCA. Young's conviction clearly involved purposeful conduct, as Michigan's fleeing-and-eluding statute applies only to those "who willfully fail[] to obey [an officer's] direction." Mich. Comp. Laws § 257.602a3(1) (1996). *See United States v. Roseboro*, 551 F.3d 226, 236 & n.5 (4th Cir. 2009) (noting that Michigan's fleeing-and-eluding statute requires the violation to be purposeful); *compare United States v. Spells*, 537 F.3d 743, 749 (7th Cir. 2008) (*mens rea* element of "knowingly or intentionally" presumed purposeful conduct); *United States v. West*, 550 F.3d 952, 960-61, 970 (10th Cir. 2008) (statute prohibiting operating a vehicle "in willful or wanton disregard of [an officer's] signal" involved purposeful conduct).

Moreover, an ordinary violation of Michigan's fleeing-and-eluding statute involves aggressive conduct. A deliberate attempt to flee or elude a police officer in a motor vehicle constitutes "a clear challenge to the officer's authority," *United States v. Harrimon*, 568 F.3d 531, 535 (5th Cir. 2009), and it usually will "call[] the officer to give chase," *Spells*, 537 F.3d at 752; *West*, 550 F.3d at 969. This is especially true when

an offender flees in the manner proscribed by the Michigan statute, i.e., "by increasing the speed of the vehicle, extinguishing the lights of the vehicle, or otherwise attempting to flee or elude . . . ." Mich. Comp. Laws § 257.602a3(1) (1996). Fleeing and eluding also is generally aggressive because it "typically lead[s] to a confrontation" between the offender and the officer. *Harrimon*, 568 F.3d at 535 (quoting *West*, 550 F.3d at 970); *see also Roseboro*, 551 F.3d at 240 ("The intentional act of disobeying a law enforcement officer by refusing to stop for his blue light signal, without justification, is inherently an aggressive and violent act." (citation omitted)).

Finally, fleeing and eluding involves violent conduct that poses a serious potential risk of physical injury to others. The purpose of fleeing in a motor vehicle is to avoid detention or arrest by a police officer, and offenders typically attempt to flee by any means necessary, including speeding, extinguishing lights at nighttime, driving the wrong way, weaving, etc.[2] *See West*, 550 F.3d at 964 ("[U]nder the stress and urgency which will naturally attend his situation, a person fleeing from law enforcement will likely drive recklessly and turn any pursuit into a high-speed chase with potential for serious harm to police or innocent bystanders." (citations omitted)); *Harrimon*, 568 F.3d at 536 (Given the "marked likelihood of pursuit and confrontation" in fleeing-and-eluding offenses, "in the typical case, an offender fleeing from an attempted stop or arrest will not hesitate to endanger others to make good his or her escape."); *see also Roseboro*, 551 F.3d at 240. Those actions nearly always pose a substantial danger to pedestrians, other motorists, passengers, and pursuing officers. *See Spells*, 537 F.3d at 752; *West*, 550 F.3d at 964-65. Not only is such risk of violence intuitive, but it has been borne out empirically. As the Fifth Circuit noted, in a study involving fifty-six law enforcement agencies across the country, 314 injuries (including fatalities) resulted from 7,737 reported pursuits. *Harrimon*, 568 F.3d at 537 (citation omitted). That constitutes

---

[2]Though it is theoretically possible to willfully fail to obey an officer's command to stop a vehicle by calmly driving the vehicle at or below the speed limit and following all traffic laws in the process, we concern ourselves only with how an offense is ordinarily or generally committed, based upon the statute. *James*, 550 U.S. at 208; *Chambers*, 129 S. Ct. at 690. As a general matter, one does not attempt to "flee or elude" a police officer in such a manner.

a rate of .04 injuries-per-pursuit and exceeds the rate of injuries-per-arson, an offense specifically enumerated in ACCA.[3]  *Id.*

Indeed, classifying Young's conviction as a violent felony accords with the purpose of ACCA.  As indicated by its title, "the Armed Career Criminal Act focuses upon the special danger created when a particular type of offender . . . possesses a gun." *Begay*, 128 S. Ct. at 1587 (citations omitted).  *Begay* held that ACCA only included as violent felonies those "crimes involv[ing] . . . purposeful, 'violent,' and 'aggressive' conduct" because those offenses "[are] such that [they] make[] more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim," and are themselves "potentially more dangerous when firearms are involved."  *Id.* at 1586 (citations omitted).  With respect to fleeing and eluding, if an offender is willing to drive recklessly to elude a police officer, without regard for the safety of bystanders or pursuing officers, it is likely that the offender would not hesitate to use a gun deliberately to harm a victim in another context.  Moreover, fleeing and eluding itself is potentially more dangerous when firearms are involved.  Given that fleeing and eluding, in the ordinary case, provokes a confrontation between the offender and an officer, a firearm could quickly change the confrontation from a scuffle to a shootout.  Again, statistics support that conclusion—as the Seventh Circuit noted, one-fourth of all state and federal inmates convicted for brandishing or displaying a firearm did so in an effort to evade capture.  *Spells*, 537 F.3d at 752 n.3 (citing U.S. Dep't of Justice, Survey of Inmates in State and Federal Correctional Facilities: Firearm Use by Offenders 11, Table 14 (Nov. 2001)).  Therefore, "[a]n individual's purposeful decision to flee an officer in a vehicle when told to stop, reflects that if the same individual were in possession of a firearm and asked to stop by police, they [sic] would have a greater propensity to use that firearm in an effort to evade arrest."  *Id.* at 752; *see also West*, 550 F.3d at 970.

---

[3]In 2007, according to the U.S. Fire Administration, 2,475 injuries resulted from roughly 267,000 arsons—a rate of .009 injuries per arson.  *Harrimon*, 568 F.3d at 537 (citing U.S. Fire Admin., *Arson in the United States*, 1 Topical Fire Research Series (Issue 8) (2001)).  Also, in 2005, according to the National Fire Prevention Association, 9,593 civilian injuries resulted from approximately 323,900 reported "intentional fires"—a rate of .03 injuries per intentional fire.  *Id.* (citing U.S. Fire Admin., *Arson for Profit: National Arson Awareness Week Media Kit* 2 (2009)).

Young argues that this Court already determined in *United States v. Foreman*, 436 F.3d 638 (6th Cir. 2006), that fleeing and eluding *simpliciter* does not pose a serious potential risk of physical injury to others, and that we must therefore remand for resentencing.[4] "Although a panel of this Court cannot overrule the decision of another panel, [it] may modify . . . prior holdings when an intervening opinion of the United States Supreme Court requires [it] to do so." *Caswell v. City of Detroit Housing Comm'n*, 418 F.3d 615, 618 n.1 (6th Cir. 2005); *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996). We find *Foreman*'s analysis to be inconsistent with *James*—as well as *Begay* and *Chambers*, which reaffirmed *James*—and therefore hold that *Foreman* does not govern this case.

Prior to *James*, we twice considered whether fleeing and eluding under an amended version of Michigan's fleeing-and-eluding statute qualified as a "crime of violence" under the career-offender provision of the sentencing guidelines, U.S.S.G. § 4B1.1(a).[5] Mich. Comp. Laws § 750.479a (1997). Under the amended statute, "fourth-degree fleeing and eluding" required proof of the same elements as the statute under which Young was convicted: (1) use of a motor vehicle, (2) an order to stop the vehicle by an officer in the lawful performance of his duty, and (3) willful disobedience of that order by speeding, extinguishing the vehicle's lights, or otherwise attempting to flee or elude the officer. *Id.* at § 950.479a(1). An offender who caused a collision, fled in a 35 mile-per-hour zone, or had a prior conviction for fourth-degree fleeing and

---

[4]Young is correct that if *Foreman* remains good law, his sentence should be reversed. So far as the statute is concerned, it takes exactly the same conduct to flee and elude the first time as it does the second (or fifth) time:
(1) use of a motor vehicle, (2) an order to stop the vehicle by an officer in the lawful performance of his duty, (3) willful disobedience of that order by speeding, extinguishing the vehicle's lights, or otherwise attempting to flee or elude the officer. Mich. Comp. Laws § 257.602a3(1) (1996). Neither the concurrence nor the government explains why having a prior fleeing-and-eluding conviction "significantly" changes the "behavior underlying" a subsequent fleeing-and-eluding offense, *Chambers*, 129 S. Ct. at 690, nor does either cite evidence suggesting that a second fleeing-and-eluding offense is inherently more dangerous than the first offense, *compare Ford*, 560 F.3d at 424 ("No one in this case has offered any empirical evidence suggesting that walkaway escapes, in contrast to traditional escapes, are apt to lead to serious risks of physical injury."). Moreover, it more appropriately falls to the legislature, not the judiciary, to render recidivist conduct relevant to the "violent felony" inquiry under the ACCA.

[5]A "crime of violence" under the career-offender provision is interpreted identically to a "violent felony" under ACCA. *United States v. Houston*, 187 F.3d 593, 594-95 (6th Cir. 1999); *United States v. Hargrove*, 416 F.3d 486, 494 (6th Cir. 2005).

eluding, meanwhile, was liable for "third-degree fleeing and eluding." *Id.* at § 950.479a(3).

In *United States v. Martin*, 378 F.3d 578 (6th Cir. 2004), we held that convictions with either of two additional circumstances—causing a collision and/or fleeing in a 35 mile-per-hour zone—qualified third-degree fleeing and eluding as a crime of violence. *Id.* at 583. We recently reaffirmed *Martin* in *United States v. LaCasse*, 567 F.3d 763 (6th Cir. 2009), which also concerned third-degree fleeing and eluding with the additional circumstances of causing a collision and/or fleeing in a 35 mile-per-hour zone.[6] Two years later, we decided in *Foreman* that, because fourth-degree fleeing and eluding did not involve either of the additional circumstances at issue in *Martin*, "the categorical approach is not determinative of whether fourth degree fleeing and eluding is a 'crime of violence.'" *Foreman*, 436 F.3d at 643. *Foreman* remanded the case to determine whether "the facts [underlying the defendant's offense] demonstrate a *serious* potential risk of physical injury to another." *Id.* (emphasis in original).

In 2007, after we decided *Foreman*, the Supreme Court announced for the first time that, when applying the categorical approach to an unenumerated offense, courts must determine "whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another."[7] *James*, 550 U.S. at 208 (emphasis added). The Court reaffirmed that approach in *Begay* and *Chambers*. *Begay*, 128 S. Ct. at 1584; *Chambers*, 129 S. Ct. at 690. *Foreman*, however, did not engage in the analysis prescribed by *James*; indeed, the panel in *Foreman* could not have known to do so because *Foreman* pre-dated *James*. Rather, *Foreman* simply reasoned

---

[6]*LaCasse* did not explicitly state that it concerned those particular additional circumstances. The government brief to the Sixth Circuit in *LaCasse* noted, however, that the district court determined, based upon the criminal history, the charging document, and the plea colloquy, that defendant's conviction resulted either from causing a collision or speeding in a 35 mile-per-hour zone. 2007 WL 2477944, at *9.

[7]*Shepard v. United States*, 544 U.S. 13 (2005), the last relevant Supreme Court case decided before *Foreman*, reiterated the holding from *Taylor v. United States*, 495 U.S. 575 (1990), that, in determining whether a prior conviction qualifies as a violent felony under ACCA, courts generally may "look only to the fact of conviction and the statutory definition of the prior offense." *Shepard*, 544 U.S. at 17 (quoting *Taylor*, 495 U.S. at 602). Both *Taylor* and *Shepard*, however, involved burglary offenses, and thus provided little guidance on how to apply the "categorical approach" to offenses not specifically enumerated in ACCA.

that, because fourth-degree fleeing and eluding can conceivably be committed without causing a serious potential risk of injury to others, "the categorical approach is not determinative." *Foreman*, 436 F.3d at 643. That *Foreman* relied upon such reasoning is especially significant upon examination of its remedy: remand to the district court to determine whether "the facts demonstrate a *serious* potential risk of physical injury to another."[8] *Id.* (emphasis in original). As the Supreme Court clarified subsequent to *Foreman*, however, such a fact-based remedy is impermissible because courts may not examine "how an individual offender might have committed [the offense] on a particular occasion," but only how an offense is ordinarily committed based upon its elements. *James*, 550 U.S. at 208; *Begay*, 128 S. Ct. at 1584; *Chambers*, 129 S. Ct. at 690. Under the guidance given in *James*, *Begay*, and *Chambers*, the mere fact that an offense *can* be committed without posing a serious potential risk of injury does not mean that the offense as *ordinarily committed* does not pose such a risk. *See James*, 550 U.S. at 207-08 (rejecting the argument that a state attempted burglary offense qualified as a violent felony only if all cases presented a serious potential risk of physical harm). Indeed, even "prototypically violent crime[s]," such as burglary, extortion, and attempted murder, can be committed in such a way as to pose no genuine risk of injury. *Id.*

For the foregoing reasons, we find that *Foreman* is no longer controlling precedent in light of *James*, *Begay*, and *Chambers*. Further, we hold that Young's conviction under Michigan's fleeing-and-eluding statute qualifies as a violent felony

---

[8]The *Foreman* opinion itself does not indicate that it ever considered the behavior underlying the typical case of fleeing and eluding. And indeed, the fact that *Foreman* remanded the case to the district court to determine whether the facts underlying the defendant's conviction posed a serious potential risk of physical injury, *Foreman*, 436 F.3d at 643, undermines the notion that *Foreman* examined how fourth-degree fleeing and eluding is typically committed. *Shepard* documents may only be examined where a statutory provision can be divided into two or more criminal categories, at least one of which is a violent felony and at least one of which is not. *See Chambers*, 129 S. Ct. at 691. *Foreman*, however, remanded for examination of *Shepard* documents even though fourth-degree fleeing and eluding constitutes a single criminal category for purposes of the categorical approach under *James*, *Begay*, and *Chambers*. This panel is unanimous in concluding that a *Shepard* remand in *Foreman* was inappropriate. *See post* at 6-8.

The Fourth Circuit's decision in *Roseboro* provides a helpful contrast. There, the Fourth Circuit determined that South Carolina's fleeing-and-eluding statute "unquestionably covers both intentional and unintentional conduct" because the statute does not require the state to prove that a defendant acted with criminal intent, i.e., willfully or purposefully. *Roseboro*, 551 F.3d at 235. Thus, because South Carolina's statute constitutes multiple criminal categories, the Fourth Circuit remanded for consultation of *Shepard* documents to "determine . . . whether [defendant's] convictions involved intentional violations" of the statute. *Id.* at 240. If the district court found that defendant purposefully violated the statute, the Fourth Circuit concluded, defendant's convictions would have involved purposeful, violent, and aggressive conduct, and thus would qualify as violent felonies under ACCA. *Id.*

under ACCA. Accordingly, the district court did not err in applying ACCA's enhancement.

**IV.**

For these reasons, we affirm Young's conviction and sentence.

_____

**CONCURRING IN PART, DISSENTING IN PART, CONCURRING IN THE JUDGMENT**
_____

SUTTON, Circuit Judge, concurring in part, dissenting in part and concurring in the judgment. Sometimes hard cases make bad law. And sometimes easy cases make bad law. Only rarely, however, do easy cases make bad law by overruling good law.

This is an easy case, and it is one that we readily can resolve without overruling one of our precedents—*United States v. Foreman*, 436 F.3d 638 (6th Cir. 2006). Since *Foreman*, the Supreme Court has decided three crime-of-violence cases, and none of them compels us to give the last rites to *Foreman*. One applies the *same approach* as *Foreman*. *See James v. United States*, 550 U.S. 192, 207–09 (2007). And the other two *bolster* the result in *Foreman* by making it *more difficult* to establish that a defendant's prior conviction is a crime of violence. *See United States v. Chambers*, __ U.S. __, 129 S. Ct. 687, 690–92 (2009); *Begay v. United States*, 553 U.S. __, 128 S. Ct. 1581, 1586 (2008). Why the majority must overrule *Foreman*, as opposed to registering disagreement with it, is a mystery.

This premature overruling of one of our precedents stands in stark contrast to a recent decision of the court. In resolving a difficult death-penalty case, *Getsy v. Strickland*, all three members of the panel registered their disagreement with the leading precedent on point, *Cooey v. Strickland*, 479 F.3d 412, 422 (6th Cir. 2007) (*Cooey II*). *See* No. 08-4199, __ F.3d __, 2009 WL 2475165, at *4 (6th Cir. Aug. 13, 2009); *id.* at *4–5 (Moore, J., concurring); *id.* at *7–11 (Merritt, J., dissenting). Yet, to its credit, the panel stood by *Cooey II*, allowing that precedent to survive, even when it meant that Mr. Getsy might not. *See Getsy v. Strickland*, No. 09-5935, __ U.S. __, 2009 WL 2490098 (Aug. 17, 2009). Perhaps I am missing something, but I fail to understand why we cannot take the same path here. This, indeed, is the easier case: There is less at stake, and a faithful adherence to *Foreman* does not even alter the result.

Consider this straightforward way to resolve the case, one that does not require us to overrule *Foreman* and one that still allows the majority to conclude that Young's fleeing-and-eluding conviction was a crime of violence. As the majority correctly notes, everything in this case depends on whether fleeing and eluding under Michigan law falls within ACCA's catchall clause for crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). And, as the majority correctly adds, a crime falls within that clause if (1) it presents a serious potential risk of injury akin in degree to the enumerated offenses—burglary, arson, extortion or the use of explosives, *see* 18 U.S.C. § 924 (e)(2)(B)(ii)—*see James* 550 U.S. at 202–09, and (2) it involves the same kind of "purposeful, violent, and aggressive" conduct as the enumerated crimes, *Begay*, 128 S. Ct. at 1586; *see also Chambers*, 129 S. Ct. at 692.

In three cases, we have applied this framework to Michigan's fleeing-and-eluding statute. In the first, *United States v. Martin*, we held that convictions involving either of two aggravators—that the "violation results in a collision or accident," Mich. Comp. Laws. § 257.602a(3)(a), or "a portion of the violation occurred in an area where the speed limit is 35 miles an hour or less," *id.* § 257.602a(3)(b)—present a serious potential risk of injury. *See* 378 F.3d 578, 582–84 (6th Cir. 2004). We reasoned that both the flight itself and the eventual apprehension "create[] a conspicuous potential risk of injury" and committing the offense through either enhancement "confirms the palpable risk." *Id.* at 582. We also analogized fleeing and eluding to escape—which we previously recognized as a "crime of violence" under the Sentencing Guidelines, *see United States v. Harris*, 165 F.3d 1062, 1068 (6th Cir. 1999), *modification recognized in United States v. Ford*, 560 F.3d 420, 423 (6th Cir. 2009)—as both involve heightened emotions and usually end with a confrontation between the officer and the suspect. *Martin*, 378 F.3d at 582–83. In the end, we concluded that fleeing and eluding poses a greater risk than escape because fleeing and eluding always involves "flight [from officers] and the inherent third-party risks that such conduct entails." *Id.* at 583.

In the second, *Foreman*, we addressed whether a fleeing-and-eluding violation amounted to a crime of violence if it did not involve any aggravating circumstances. We acknowledged that such conduct, like the conduct in *Martin*, creates a potential risk of physical injury to another. 436 F.3d at 642–43. But we decided it was only "the presence of . . . fleeing in a low speed zone or causing an accident" that enabled us categorically to characterize the fleeing-and-eluding violation in *Martin* as ordinarily posing "a *serious* potential risk." *Id.* at 643 (emphasis in original). We therefore held that the risk of injury was not "serious" enough to amount to a crime of violence.

In the third, *United States v. LaCasse*, we considered whether the Supreme Court's intervening decisions in *Begay* and *Chambers* altered these analyses. *See* 567 F.3d 763, 764 (6th Cir. 2009). At issue was whether a typical third-degree fleeing-and-eluding conviction involves the type of purposeful, violent or aggressive conduct targeted by ACCA. *Id.* at 765–67. As laid out in the current statute, a third-degree offense involves the same conduct as a fourth-degree offense plus the presence of one of three aggravators: the two present in *Martin* or a prior conviction for fleeing and eluding. *See* Mich. Comp. Laws. § 257.602a(3) (2008). Michigan's third-degree fleeing-and-eluding statute, we reasoned, requires affirmative, aggressive conduct distinguishable from the strict liability drunk-driving offense in *Begay*. *LaCasse*, 567 F.3d at 766. And *Chambers*, which held that a "failure to report" to prison was "a separate crime, different from escape" and not a "violent felony" under ACCA, 129 S. Ct. at 691–93, gave "added force" to this conclusion. *LaCasse*, 567 F.3d at 766–67. *Chambers'* distinction between a prison breakout and a failure to report suggested that a traditional escape remained a "violent felony" involving the same type of purposeful, violent, or aggressive conduct targeted by ACCA. *Id*. at 767. And since "fleeing and eluding [is] but an attempt to escape," we reaffirmed that a third-degree fleeing-and-eluding conviction remained categorically a "violent felony" under ACCA. *Id.* at 764, 767.

Taken together, these three decisions create the following line: A fourth-degree offense (*e.g.*, a first-time offender) is not a crime of violence (*Foreman*); and at least two

types of third-degree offenses (*e.g.*, one that causes physical injury or occurs in a thirty-five-mph zone) are crimes of violence (*Martin* and *LaCasse*). That leaves today's question: Is the last type of third-degree offense, in which a defendant has committed fourth-degree fleeing and eluding more than once in five years, a crime of violence? Yes, I say, and the basis for saying so is straightforward and respectful of all three precedents: simply draw a line between run-of-the-mine violations of the statute (treated as non-violent crimes) and aggravated violations of the statute (treated as violent crimes). That is precisely what *LaCasse* seemed to do with the issue. And that, it seems to me, should end this case, particularly since it leads to the same result that the majority's approach does. If the majority also wishes to register its disagreement with *Foreman*, it is free to do so and later panels (or the *en banc* court) can take that criticism into consideration. But nothing in this case presents a basis for overruling the decision, much less compels us to do so.

In maintaining that *Foreman* must be overruled, the majority notes that "Young"—the losing appellant in this case—"is correct that if *Foreman* remains good law, his sentence should be reversed." Maj. Op. at 8 n.4. That is not a recognized exception to *stare decisis*. A litigant's position in a case, least of all the position of the losing litigant, does not require us to overrule this precedent, particularly since Young would lose whether *Foreman* remains good law or not.

Nor is *Foreman* inconsistent with *Martin* or with intervening Supreme Court precedent. *Foreman*'s holding does not contradict *Martin*'s holding. Third-degree and fourth-degree fleeing and eluding are separate offenses, and *Martin* addressed the only offense before it: third-degree fleeing and eluding. *See* 378 F.3d at 582.

The Supreme Court's recent decisions also do not require the overruling of *Foreman*. *Begay* and *Chambers* both make it harder, not easier, to classify an offense as a crime of violence, because they both held (as *Foreman* held) that the offenses before them *were not* crimes of violence. *See Begay*, 128 S. Ct. at 1586, 1588; *Chambers*, 129 S. Ct. at 692–93. And *Foreman* applied the categorical approach, including the requirement that courts look to the ordinary manner in which an offense is committed,

adhered to in *James* and required by *Taylor v. United States*, 495 U.S. 575 (1990), which predates *Foreman*. Nothing, in short, justifies abandoning our custom of respecting the holdings of the panels that come before us. *See Blair v. Henry Filters, Inc.*, 505 F.3d 517, 526 (6th Cir. 2007).

If there was a time to overrule *Foreman* (and I don't think there was), it was in *LaCasse*, not this case. *LaCasse* itself suggests, if not explicitly adopts, the same line I propose. If we now have the right to overrule *Foreman*, so did the *LaCasse* panel. But it left the decision as is. We instead should leave all three decisions (*Foreman*, *Martin* and *LaCasse*) where we found them, standing by the sensible line they draw: between fleeing-and-eluding offenses that involve an aggravating circumstance and those that do not.

I also see no cognizable reason to treat Young's recidivist offense differently from the other aggravating circumstances. On the contrary: there is good reason to think that it poses *more risk* of physical injury and is *more violent* than at least one of the others: the thirty-five-mph-zone aggravator. Many people, I suspect, would prefer to take their chances in the vicinity of a first-time thirty-five-mph violator than in the vicinity of someone who has already been arrested for fleeing and eluding before and thus knows that what they are doing is wrong and has embraced the risks nonetheless.

Surely, as a general matter, it also makes sense to treat repeat offenders differently from first-time offenders. A central premise of the "career offender" component of ACCA—the law we interpret today—is that recalcitrant law-breakers pose risks to the public that are different in kind and blameworthiness from initial law-breakers. In the absence of that policy judgment, ACCA would not exist.

*Stare decisis* provides one reason for the approach I recommend. The reality that the outcome of this case would be the same, whether *Foreman* is good law or bad, provides another. But it makes the least sense to overrule a precedent gratuitously in such an evolving area of federal law. "[T]he mire into which ACCA's draftmanship and *Taylor*'s 'categorical approach' have pushed us," *Chambers*, 129 S. Ct. at 694 (Alito, J., concurring), is consuming an increasing portion of our docket. This is the fourth case

in five years dealing with one statute from one State, with each case asking us to slice the statute into thinner analytical pieces. Outside our circuit, a deep split has arisen over whether similar fleeing-and-eluding offenses present the requisite risk of injury, *compare United States v. Kendrick*, 423 F.3d 803, 809 (8th Cir. 2005), *and United States v. Howze*, 343 F.3d 919, 921–22 (7th Cir. 2003), *with United States v. Kelly*, 422 F.3d 889, 893–95 (9th Cir. 2005), or the requisite type of aggressive conduct, *compare United States v. West*, 550 F.3d 952, 968–71 (10th Cir. 2008), *and United States v. Spells*, 537 F.3d 743, 752–53 (7th Cir. 2008), *with United States v. Harrison*, 558 F.3d 1280, 1295–96 (11th Cir. 2009). It is one thing to enter this quagmire because a case requires it; it is quite another to re-shift the shifting sand when nothing demands it.

There is one nuance about *Foreman* that deserves mention, but it does not require its overruling. When we hold that an offense is not categorically a crime of violence, we often remand the case to the district court so that the Government may establish through *Shepard* sources that the defendant's conduct was a crime of violence, as we did in *Foreman*, 436 F.3d at 643, and as we have done in other cases, *see, e.g.*, *United States v. Mosley*, No. 08-1783, __ F.3d __, 2009 WL 2176634, at *4 (6th Cir. July 23, 2009); *United States v. Baker*, 559 F.3d 443, 455 (6th Cir. 2009); *United States v. Armstead*, 467 F.3d 943, 948–50 (6th Cir. 2006). This type of remand should not be done reflexively, however, for it does not always make sense, and in some settings it may even suggest that the court is embracing a *non-categorical* approach to the issue. If, say, the state law offense has just one category, or two categories that both amount to crimes of violence, nothing productive can come from a *Shepard* inquiry. By contrast, when an offense is divisible into two or more categories, and at least one category is a "crime of violence" and at least one is not, there is something the *Shepard* sources can reveal: that the defendant committed a type of offense that is a crime of violence. *See Shepard v. United States*, 544 U.S. 13, 19–21 (2005); *Chambers*, 129 S. Ct. at 690–91.

The *Shepard* remand in *Foreman* illustrates the point. There are three ways to commit fourth-degree fleeing and eluding: "increasing the speed of the vehicle, extinguishing the lights of the vehicle, or otherwise attempting to flee or elude." *See*

Mich. Comp. Laws § 257.602a(1).  Nothing in *Foreman* suggests that any one of these categories is a crime of violence.  The point of the opinion was to say that *all three* offenses were *not* crimes of violence.  Only confusion, I submit, comes from a *Shepard* remand in these circumstances.  For in this setting, a remand suggests that we are asking the district court to do something that *Taylor* prohibits:  engaging in a fact-specific inquiry about how *this defendant* committed *this offense*.  *Taylor*, 495 U.S. at 600–02.  It also inadvertently suggests to district courts that we ourselves will ignore the categorical approach—and, worse, that we may reverse them for not doing so.  As I see it, a *Shepard* remand should be issued only when the crime at issue contains at least two categories, at least one way of committing the offense is a crime of violence, and at least one way of committing the offense is not.  But none of this justifies overruling *Foreman*, which at worst made a mistake that many of our precedents in this area have made.  All we should do is sound a word of caution about *Shepard* remands and leave *Foreman* as we found it.

One final note.  A court of this size cannot function if it does not stand by its prior decisions—if each panel is a court unto itself in deciding whether to adhere to a prior decision.  Respect for our precedents, respect for each other and respect for the district court judges and litigants who must live with our decisions demands that each panel treat the overruling of precedents as a measure of last resort—an unavoidable act that intervening Supreme Court precedent (or something similar) compels.  By any measure, that did not happen here.  The majority seeing things differently, I respectfully dissent from this aspect of its decision and otherwise join the rest of it.