NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1052n.06

No. 11-3833

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
*Oct 05, 2012*
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

    v.

WILLIE YATES,

    Defendant-Appellant.

On Appeal from the United
States District Court for the
Northern District of Ohio

---

**Before:**    **GUY, DAUGHTREY, and STRANCH, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**  Defendant Willie Yates was convicted following a jury trial of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and one count of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Defendant appeals from the district court's denial of his motion to suppress evidence seized following the search of his residence pursuant to a warrant. Defendant also contends that the district court erred in sentencing him as an armed career criminal subject to both an enhanced mandatory minimum sentence of 15

years and a greater sentencing guideline range. *See* 18 U.S.C. § 924(e)(1); UNITED STATES SENTENCING GUIDELINES MANUAL (USSG) § 4B1.4 (2010). Finding no error, we affirm.[1]

## I.

On October 26, 2010, a search warrant was obtained and executed at 1009 Merton Avenue, Akron, Ohio, based on the affidavit of Akron Police Detective Timothy Harvey. Members of the Akron Police Department detained defendant, a/k/a "2 Legit," outside the residence before conducting the search that resulted in the seizure of the firearms, ammunition, and crack cocaine that led to the charges in this case. Specifically, officers seized: (1) a .38 caliber Rossi revolver from the living room; (2) 23 rounds of Remington .38 caliber ammunition from the top of a dresser in a bedroom; (3) a .22 caliber Sterling pistol, magazine, and ammunition from inside a microwave located in a detached garage; and (4) approximately 4.5 grams of crack cocaine from the top of the refrigerator in the kitchen. Other items seized included a digital scale with a razor blade, $258 in cash, a glass crack pipe, photographs, and documents bearing defendant's name and address.

Defendant was charged in a two-count indictment with possession of firearms or ammunition after having been convicted of three prior felonies, and with possession of cocaine base after having been convicted of two prior drug offenses. A superceding indictment repeated the felon-in-possession charge in count 1, 18 U.S.C. § 924(g)(1), and

---

[1]Declining to consider defendant's *pro se* supplemental brief because counsel has been appointed to represent defendant in this appeal, this court granted the government's motion to strike the *pro se* brief on June 4, 2012. *See United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009), *cert. denied*, 131 S. Ct. 538 (2010); *United States v. Williams*, 641 F.3d 758, 770 (6th Cir.), *cert. denied*, 132 S. Ct. 348 (2011).

substituted a charge of possession with intent to distribute cocaine base in count 2, 21 U.S.C. § 841(a)(1) and (b)(1)(C).

In a motion to suppress, defendant argued that the affidavit was insufficient to establish probable cause to support the state court's issuance of the search warrant. After briefing and oral argument, the district court found the affidavit did provide sufficient basis for the issuing judge to conclude that there was a fair probability that contraband or evidence of a crime would be found in the residence—but not in the detached garage. The district court also concluded that even if the affidavit did not establish probable cause, the *Leon* good-faith exception to the warrant requirement would apply. *United States v. Leon*, 468 U.S. 897, 922-23 (1984). At the conclusion of a two-day jury trial that followed, defendant was found guilty of all charges.

At sentencing, defendant objected to the presentence report's recommendation that he be sentenced as an armed career criminal as a result of his having at least three prior convictions for a "violent felony" as that term is defined by the Armed Career Criminal Act (ACCA).[2] Without disputing that he had two prior convictions that qualified—arson and robbery—defendant argued that he did not have a third conviction for a violent felony. Overruling the objection, the district court concluded that defendant had at least one prior Ohio conviction for fourth-degree felony failure to comply with an order or signal of a police

---

[2]The government filed an information giving notice of its intention to seek an enhanced statutory maximum sentence of not more than 30 years upon conviction for possession with intent to distribute cocaine base. That enhancement is not at issue on appeal.

officer that qualifies as a "violent felony" because it "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).[3]

The armed-career-criminal designation resulted in an increase in the mandatory minimum sentence from 10 to 15 years (§ 924(e)(1)), and an increase in the offense level from 28 to 34 (USSG § 4B1.4(b)). Given an offense level of 34 and a criminal history category of VI, defendant's applicable sentencing guideline range was 262 to 327 months. The district court considered the relevant sentencing factors and sentenced defendant to concurrent 327-month terms of imprisonment to be followed by a six-year term of supervised release. This appeal followed.

## II.

### A.    Motion to Suppress Evidence

On appeal from the decision on a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions *de novo. United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002). If the district court denied the motion to suppress, this court must view the evidence in the light most favorable to the government. *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc); *see also United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

---

[3]The presentence report reflects that defendant had three prior convictions for fourth-degree felony failure to comply, one of which was committed on the same occasion as the robbery. (PSR ¶¶ 42, 47 and 48.)

### 1. Affidavit

Detective Harvey's affidavit dated October 26, 2010, alleged he had good cause to believe that crack cocaine, firearms, currency, measuring and processing devices, and records and documents related to drug trafficking would be found within the premises at 1009 Merton Avenue. Explaining that he was assigned to the Narcotics Uniform Detail and had been a member of the Akron Police Department for eleven years, Harvey stated that he knew from experience and training that drug trafficking involves cash transactions, records and documents of those transactions, equipment and scales, and the use of firearms and other weapons to maintain security. Detective Harvey attested that he spoke with "an information source," referred to as the confidential informant (CI), concerning alleged drug activity at 1009 Merton Avenue. The CI told him that the occupant Willie Yates, a/k/a "2 Legit," was in possession of crack cocaine, was selling it from the residence, and was a dealer supplying crack cocaine to multiple locations in the City of Akron.

In addition to this information, Harvey reported that the CI had arranged a purchase of crack cocaine from 1009 Merton "within the past 10 days." That transaction was described as follows:

> Affiant, within the past ten days, went to the above described premises with an information source [CI]. The source was searched by Akron Street Narcotics officers and was found not to be in possession of any controlled substances or currency. The source was provided with APD funds. Affiant observed as the source arrived at 879 Hunt Street: where they picked up Hillary D. Patterson (W/F/32). Patterson then directed the source to drive to her suppliers [sic] house at 1009 Merton Ave. Upon arriving at the address, the source parked in the street and Sgt. Forney observed Patterson exit the

vehicle and enter the front door of 1009 Merton Ave. A few minutes later affiant observed Patterson exit the residence and return to the sources' [sic] vehicle. Sgt. Forney and affiant then observed the source and Patterson drive back to 879 Hunt Street where Patterson exited the vehicle. The source then exited the driveway of 879 Hunt St. and travelled eastbound on Hunt St. Upon return, the source delivered to affiant a quantity of crack cocaine that the source stated was purchased by Patterson within 1009 Merton Avenue. The source stated that they had picked up Patterson at 879 Hunt St. and drove to "2 Legit's" house located at 1009 Merton Ave. where the source gave Patterson the APD buy-money. The source stated that Patterson entered the residence and returned with the crack cocaine that Patterson stated she had purchased from "2 Legit" with the funds previously provided. The source was again searched and found again not to be in possession of controlled substances or currency. The substance was field tested by Akron Street Narcotics officers and indicated a positive reaction for the presence of a controlled substance, to wit: crack cocaine.

Harvey also attested that the CI, although unnamed in the affidavit, had previously provided him with information concerning the possession and sale of controlled substances in the Akron, Summit County, Ohio area that Harvey had corroborated, and that the CI had displayed "specific knowledge as to the uses, effects and distribution patterns of controlled substances in the Akron, Summit County, Ohio area."

The affidavit added that, during the transaction described above, Harvey saw a white 2001 Cadillac with Ohio registration "2LEGIT" parked in the driveway of 1009 Merton Avenue. Harvey stated that he knew the Cadillac was owned and driven by Yates because another narcotics officer had stopped Yates while driving the Cadillac on June 1, 2010. Also, in response to a subpeona issued on October 25, 2010, First Energy Service Company identified Willie Yates, Jr., as the subscriber for 1009 Merton with a "move-in" date of

February 2, 2010. Harvey explained that he knew of and participated in numerous arrests of Willie Yates, nine of which were specifically listed in the affidavit, and determined that Willie Yates was on community control for a recent conviction for possession of crack cocaine at that time. Finally, Harvey was aware that the premises at 1009 Merton Avenue had been the subject of citizen calls to the Akron Police Narcotics Unit.

### 2. Probable Cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. A judge issuing a search warrant must "make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The issuing judge's determination is afforded great deference, and the duty of the reviewing court is to ensure that the affidavit provided the issuing judge "with a substantial basis for determining the existence of probable cause." *Id*. at 239; *see also United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).

Defendant argues first that the affidavit could not establish probable cause because it contained uncorroborated hearsay concerning the purchase of crack cocaine by an apparently unwitting intermediary whose reliability had not been established. Specifically,

the CI told Harvey that Patterson purchased the crack cocaine from "2 Legit" while inside the residence at 1009 Merton Avenue. Although defendant emphasizes that Patterson was not interviewed or searched by the police before or after the transaction, Patterson was an identified intermediary and not a tipster or police informant. We have explained that "while an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005).

In fact, it is clear that a judge issuing a search warrant may rely on hearsay evidence in making a probable cause determination. *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009); *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999). When the bulk of the information in the affidavit is hearsay from a confidential source, the "court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances analysis." *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006) (citing *Frazier*, 423 F.3d at 532). Although "independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause," in the absence of any indicia of the informant's reliability courts insist that the affidavit contain substantial independent police corroboration. *Frazier*, 423 F.3d at 532.[4]

---

[4]The district court acknowledged that the more typical scenario involves an informant who conducts the "controlled buy." Indeed, this court has recognized that an officer's participation in such a "controlled buy" is independent corroboration which may provide sufficient facts to support a finding of probable cause even absent other information regarding the informant's reliability. *See United States v. Archibald*, 685 F.3d 553, 557 (6th Cir. 2012) (citing *Coffee*, 434 F.3d at 893-95).

Here, the CI told Harvey that Willie Yates, a/k/a "2 Legit," was a crack cocaine dealer and was selling crack cocaine from the premises at 1009 Merton Avenue. Although the CI's identity was withheld, Harvey knew the CI and attested that the CI previously provided accurate information concerning possession and distribution of controlled substances in the Akron area. The CI also demonstrated knowledge concerning drug use and the distribution patterns of controlled substances in the Akron area. This information was coupled with independent police corroboration. Not only did Harvey know Yates, but he also knew that Yates was the subscriber for the utilities for the premises and that Yates drove the white Cadillac that was in the driveway during the arranged transaction. Harvey stated that he was aware that Yates had prior arrests involving possession and distribution of crack cocaine, and that there had been citizen complaints to the Akron Narcotics Unit concerning the premises at 1009 Merton Avenue. Harvey also was involved in the search of the CI before and after the transaction, and participated in the surveillance of the CI driving Patterson to and from her supplier's house at 1009 Merton Avenue. Patterson was observed going into the premises and coming out a few minutes later to get in the CI's vehicle, and the substance that the CI reportedly obtained from Yates through Patterson tested positive for cocaine. There is no reason to suspect that Patterson obtained the cocaine elsewhere, or that Patterson was anything but an unwitting intermediary obtaining crack cocaine from her supplier.

Defendant also argues that reliance on a single drug transaction was insufficient to establish a nexus between the premises and the evidence sought. *See United States v.*

*Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (holding that affidavit's description of marijuana field as "near" residence to be searched did not establish required nexus). As this court recently explained in rejecting a similar claim, however, "we have previously found that a single controlled purchase is sufficient to establish probable cause to believe that drugs are present at the purchase location." *Archibald*, 685 F.3d at 558. Moreover, we have found evidence of ongoing drug trafficking provided a sufficient basis to infer that evidence of that crime would be found at the dealer's residence. *Gunter*, 551 F.3d at 481; *see also United States v. Moore*, 661 F.3d 309, 314 (6th Cir. 2011) (finding sufficient nexus where residence to be searched was the residence in which the drugs were observed); *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) ("'[i]n the case of drug dealers, evidence is likely to be found where the dealers live'") (citation omitted).[5]

Finally, defendant argues that probable cause became stale because the affidavit indicated only that the single drug transaction at the premises occurred "within the past ten days." Whether information is stale depends on the "inherent nature of the crime," and the critical question is whether the affidavit established a fair probability that evidence would still be found at the location to be searched. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998); *see also United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006) (discussing

---

[5]Nor does defendant's citation to *United States v. Van Shutters*, 163 F.3d 331, 336-38 (6th Cir. 1998), support defendant's assertion that the affidavit must establish a specific nexus between the evidence sought and the specific location within the house (*i.e.*, drugs on top of the fridge, paraphernalia inside a bread box, and ammunition on a bedroom dresser). In *Van Shutters*, the warrant failed to state a nexus because it completely neglected to indicate any connection between the suspected counterfeiter and that residence.

*Spikes* and upholding warrant for search of evidence of bank fraud that occurred three years earlier). The function of the staleness inquiry is not to set an arbitrary time limit within which the facts must be presented in a warrant application. *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001) (citing *Spikes*, 158 F.3d at 923) (upholding warrant where the last of the informant's 12 purchases occurred 23 months before warrant application); *see also Archibald*, 685 F.3d at 558 (upholding warrant where controlled purchase from residence was three days earlier); *United States v. Jackson*, 470 F.3d 299, 308 (6th Cir. 2006) (same).

"When analyzing staleness, we look to the specific facts of the case and consider several factors, including (1) the character of the crime, (2) the criminal, (3) the thing to be seized, and (4) the place to be searched." *Archibald*, 685 F.3d at 558 (citing *Abboud*, 438 F.3d at 572-73). Here, the affidavit indicated that the distribution of crack cocaine was ongoing rather than an isolated instance; that the defendant was residing at the premises and had been listed on the utilities for more than six months; and that defendant was distributing crack cocaine from the premises. Although the crack cocaine itself is easily transferred and readily consumed, evidence of trafficking from the dealer's residence in this case is sufficient to establish a fair probability that contraband or other evidence would still be found in the premises up to ten days after the reported drug transaction. *Cf. United States v. Hammond*, 351 F.3d 765, 771 (6th Cir. 2003) (finding tip that a marijuana growing operation was on defendant's property was not stale although made five months earlier).

Considering the CI's veracity and basis for knowledge as part of the totality of the circumstances, including corroboration of the known CI's information, and giving the issuing judge's determination the deference it deserves, the affidavit provided a substantial basis for concluding that there was probable cause to believe contraband or evidence of drug trafficking would be found at 1009 Merton Avenue.

## B.      Armed Career Criminal

A defendant convicted of being a felon in unlawful possession of a firearm is subject to an enhanced sentence if, when the unlawful possession occurred, the felon has had three previous convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e)(1); *see also Sykes v. United States*, 131 S. Ct. 2267, 2270 (2011).  In addition, a defendant who is subject to an enhanced sentence under § 924(e) is to be sentenced as an armed career criminal.  USSG § 4B1.4(a). We review the district court's determination *de novo*.  *United States v. Flores*, 477 F.3d 431, 434 (6th Cir. 2007).

Defendant's enhancement in this case was based on his having had three previous convictions for a "violent felony," which is defined as any crime punishable by a term of imprisonment exceeding one year that:

> (I) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added). In determining whether an offense is a "violent felony," the court must use the "categorical approach" and "consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." *James v. United States*, 550 U.S. 192, 202 (2007); *see also Begay v. United States*, 553 U.S. 137, 140 (2008). Also, we are concerned with how the offense is generally or ordinarily committed, not how it might be committed in an unusual case. *James*, 550 U.S. at 207-08; *Chambers v. United States*, 555 U.S. 122, 128-30 (2009); *United States v. Young*, 580 F.3d 373, 377 (6th Cir. 2009).[6]

As noted earlier, defendant conceded that he had two prior convictions for a violent felony—robbery (use, attempted use, or threatened use of physical force) and arson (an enumerated offense)—but maintained that he did not have a third predicate offense because Ohio's fourth-degree felony failure to comply with an order or signal of a police officer did not constitute a violent felony under the residual clause of § 924(e)(2)(B)(ii). The Ohio statute at issue makes it unlawful to "operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." OHIO REV. CODE § 2921.331(B). A violation of division (B) is a felony in the fourth degree if "in committing the offense, the offender was fleeing

---

[6]We have recognized that the same analysis applies to determining whether a prior conviction is a "crime of violence" for purposes of the career offender guidelines. *See United States v. Gibbs*, 626 F.3d 344, 352 n.6 (6th Cir. 2010).

immediately after the commission of a felony." *Id*. § 2921.331(C)(4). In other words, fourth-degree felony failure to comply is, in essence, vehicular flight from an officer after the commission of another felony.

Previously, we applied a two-part test in determining whether an offense qualified under the residual clause: (1) whether the offense "poses a serious potential risk of physical injury to others"; and (2) whether the offense "involves the same kind of purposeful, violent and aggressive conduct as the enumerated offenses of burglary, arson, extortion, or offenses involving the use of explosives." *Young*, 580 F.3d at 377. However, the Court in *Sykes* clarified that "[i]n many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk, for crimes that fall within the former formulation and those that present serious potential risks of physical injury to others tend to be one and the same." *Sykes*, 131 S. Ct. at 2275. The Court reiterated that "risk levels provide a categorical and manageable standard." *Id*. at 2275-76. Distinguishing *Begay*, which found recidivist driving under the influence did not fall within the residual clause, the Court in *Sykes* explained that *Begay* "involved a crime akin to strict liability, negligence, and recklessness crimes; and the purposeful, violent, and aggressive formulation was used in that case to explain the result." *Id*. at 2276.

Defendant seems to argue that, like the DUI offense in *Begay*, fourth-degree vehicular flight from an officer is akin to a strict liability, negligence, or recklessness crime. This contention is without merit. The Ohio statute makes it unlawful to operate a motor vehicle

so as *willfully* to elude or flee a police officer, which is similar to the "stringent *mens rea*

requirement" that distinguished *Sykes* from *Begay*. *Sykes*, 131 S. Ct. at 2275 (explaining that

the conduct for which the drunk driver was convicted in *Begay* need not be purposeful or

deliberate, while violators of the Indiana vehicular flight statute in *Sykes* must act

"knowingly or intentionally"); *see also Young*, 580 F.3d at 377 (Michigan's fleeing-and-

eluding statute apples only to those who willfully fail to obey).  In any case, as *Sykes*

instructs, we do not need to decide the issue by reference to the purposeful, violent and

aggressive formulation where the risk levels suffice to resolve the case before us.

Here Ohio's prohibition on willfully eluding and fleeing an officer in a vehicle

immediately after the commission of another felony, as a categorical matter, presents a

serious potential risk of physical injury to another which is "'comparable to that posed by its

closest analog among the enumerated offenses.'" *Sykes*, 131 S. Ct. 2273 (quoting *James*, 550

U.S. at 203 (explaining that attempted burglary poses risks akin to that of completed

burglary)).[7]  Consistent with our analysis of the risk of violating Michigan's fleeing-and-

eluding statute in *Young*, the Supreme Court identified the risks inherent in typical vehicular

flight from an officer and concluded that they are "similar in degree of danger to that

involved in arson" and "present[] more certain risk as a categorical matter than burglary."

*Sykes*, 131 S. Ct. at 2273-74.  That is:

---

[7]Although it is theoretically possible "to operate a vehicle so as willfully to elude or flee a police officer" while "fleeing immediately after the commission of a felony" without creating a serious potential risk of physical injury to another, one does not generally attempt to flee or elude an officer in such a manner. OHIO REV CODE § 2921.33(B) and (C)(4); *see Young*, 580 F.3d at 378 n.2.

When a perpetrator defies a law enforcement command by fleeing in a car, the determination to elude capture makes a lack of concern for the safety of property and persons of pedestrians and other drivers an inherent part of the offense. Even if the criminal attempting to elude capture drives without going at full speed or going the wrong way, he creates the possibility that police will, in a legitimate and lawful manner, exceed or almost match his speed or use force to bring him within their custody. A perpetrator's indifference to these collateral consequences has violent—even lethal—potential for others. A criminal who takes flight and creates a risk of this dimension takes action similar in degree of danger to that involved in arson, which also entails intentional release of a destructive force dangerous to others. This similarity is a beginning point in establishing that vehicle flight presents a serious potential risk of physical injury to another.

Another consideration is a comparison to the crime of burglary. Burglary is dangerous because it can end in confrontation leading to violence. [*James*, 550 U.S. at 200.] The same is true of vehicle flight, but to an even greater degree. The attempt to elude capture is a direct challenge to an officer's authority. It is a provocative and dangerous act that dares, and in a typical case requires, the officer to give chase. The felon's conduct gives the officer reason to believe that the defendant has something more serious than a traffic violation to hide. In Sykes' case, officers pursued a man with two prior violent felony convictions and marijuana in his possession. In other cases officers may discover more about the violent potential of the fleeing suspect by running a check on the license plate or by recognizing the fugitive as a convicted felon. *See, e.g.*, *Arizona v. Gant*, [129 S. Ct. 1710, 1715] (2009).

Because an accepted way to restrain a driver who poses dangers to others is through seizure, officers pursuing fleeing drivers may deem themselves duty bound to escalate their response to ensure the felon is apprehended. *Scott v. Harris*, 550 U.S. 372, 385 [] (2007), rejected the possibility that police could eliminate the danger from a vehicle flight by giving up the chase because the perpetrator "might have been just as likely to respond by continuing to drive recklessly as by slowing down and wiping his brow." And once the pursued vehicle is stopped, it is sometimes necessary for officers to approach with guns drawn to effect arrest. Confrontation with police is the expected result of vehicle flight. It places property and persons at serious risk of injury.

Risk of violence is inherent to vehicle flight. Between the confrontations that initiate and terminate the incident, the intervening pursuit creates high risks of crashes. It presents more certain risk as a categorical matter than burglary. It is well known that when offenders use motor vehicles as their means of escape they create serious potential risks of physical injury to others. Flight from a law enforcement officer invites, even demands, pursuit. As that pursuit continues, the risk of an accident accumulates. And having chosen to flee, and thereby commit a crime, the perpetrator has all the more reason to seek to avoid capture.

Unlike burglaries, vehicle flights from an officer by definitional necessity occur when police are present, are flights in defiance of their instructions, and are effected with a vehicle that can be used in a way to cause serious potential risk of physical injury to another. See *post*, at 2280 (THOMAS, J., concurring in judgment); see also *post*, at 2280-2281 (listing Indiana cases addressing ordinary intentional vehicle flight and noting the high-risk conduct that those convictions involved).

*Sykes*, 131 S. Ct. at 2273-74. The Court went on to explain that although statistics are not dispositive, in fact, statistics support the conclusion that the risk of simple vehicular flight may outstrip the risk of personal injury from arson or burglary. *Id*. at 2274-75.

The Court's conclusion in *Sykes* that simple vehicular flight poses risks comparable to or more certain than the enumerated offenses of arson and burglary applies even more so to the offense at hand because fourth-degree felony failure to comply requires not only that an offender willfully elude or flee from an officer's signal to stop, but also that the offender be fleeing immediately after the commission of another felony. The district court did not err in finding that defendant's conviction for this aggravated vehicular flight in violation of Ohio Rev. Code § 2921.331(C)(4) constitutes a violent felony for purposes of the ACCA. As

such, defendant had three prior convictions for a violent felony and was properly sentenced as an armed career offender.

**AFFIRMED.**