**The STATE of Ohio, Appellee,**

v.

**SIMS, Appellant.**

[Cite as *State v. Sims,* 184 Ohio App.3d 741, 2009-Ohio-5751.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 08CA71.

Decided Oct. 30, 2009.

Stephen K. Haller, Greene County Prosecuting Attorney, and Elizabeth A. Ellis, Assistant Prosecuting Attorney, for appellee.

Richard L. Kaplan, for appellant.

GRADY, Judge.

{¶ 1} Defendant, Joseph Sims, appeals from his conviction and sentence for engaging in a pattern of corrupt activity, complicity to commit forgery, and possession of criminal tools.

{¶ 2} On or about May 9, 2008, defendant and Ronald Wood went to the Walmart on Wilmington Pike in Sugarcreek Township, Greene County, Ohio. Loss-prevention officers overheard the two men discuss cashing a check. Ronald Wood then attempted to cash a fraudulent payroll check. When Walmart refused to cash the check, Wood and defendant left the store and were subsequently apprehended by Sugarcreek Township police. Wood admitted to police that defendant had given him the check made out to him and had asked Wood to cash it. Defendant had agreed to give Wood a portion of the money if he cashed the check.

{¶ 3} As a result of these events, defendant was indicted in case No. 2008CR341 on one count of complicity to commit forgery, R.C. 2923.03(A)(2), 2913.31(A)(3), a felony of the fifth degree, and one count of possession of criminal tools, R.C. 2923.24(A), also a fifth-degree felony.

{¶ 4} Further investigation revealed that between May 1 and May 14, 2008, defendant provided several other subjects, including William Jackson, Marco Shoecraft, and Aaron Roebuck, with counterfeit payroll checks that were cashed at Walmart locations in Sugarcreek Township and Englewood, Ohio. Defendant would keep half the money obtained and give the other half to the person who cashed the check. Defendant admitted to police that he supplied the counterfeit checks to the others and kept at least one-fourth of the money they obtained.

{¶ 5} Defendant was subsequently indicted in case No. 2008CR353 on one count of engaging in a pattern of corrupt activity, R.C. 2923.32(A)(1), a felony of the second degree; five counts of complicity to commit forgery, R.C. 2923.03(A)(2), 2913.31(A)(3), felonies of the fifth degree; one count of theft, R.C.

2913.02(A)(1), a felony of the fifth degree; and one count of forgery, R.C. 2913.31(A)(3), a felony of the fifth degree.

{¶ 6} Defendant entered pleas of guilty pursuant to a negotiated plea agreement to the charges in case No. 2008CR341 and the engaging in a pattern of corrupt activity charge in case No. 2008CR353. In exchange, the state dismissed the other charges in case No. 2008CR353 and agreed that any prison term imposed in case No. 2008CR341 would run concurrently with any prison term imposed in case No. 2008CR353. Defendant agreed to pay restitution on all counts, including those that were dismissed.

{¶ 7} The trial court sentenced defendant to concurrent maximum prison terms on each of the charges: 12 months on each of the charges in case No. 2008CR341 and eight years on the corrupt-activity charge in case No. 2008CR353, for a total sentence of eight years.

{¶ 8} Defendant timely appealed to this court from his convictions and sentences. He challenges only his sentence on appeal.

FIRST ASSIGNMENT OF ERROR

{¶ 9} "The court abused its discretion in sentencing Mr. Sims to prison when all the relevant information indicated he should receive community control."

{¶ 10} Defendant argues that the trial court abused its discretion in sentencing him to an aggregate eight-year prison term.

{¶ 11} In *State v. Barker*, 183 Ohio App.3d 414, 2009-Ohio-3511, 917 N.E.2d 324, at ¶ 36–38, we wrote:

{¶ 12} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum, consecutive, or more than minimum sentences. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at paragraph seven of the syllabus. Nevertheless, in exercising its discretion, the trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and 2929.12. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, at ¶ 37.

{¶ 13} "When reviewing felony sentences, an appellate court must first determine whether the sentencing court complied with all applicable rules and statutes in imposing the sentence, including R.C. 2929.11 and 2929.12, in order to find whether the sentence is contrary to law. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. If the sentence is not clearly and convincingly contrary to law, the trial court's decision in imposing the term of imprisonment must be reviewed under an abuse-of-discretion standard. Id.

{¶ 14} " 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable.' *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144."

{¶ 15} Before imposing its sentence, the trial court stated that it had considered the presentence investigation report and the statements of both parties, R.C. 2929.19(B)(1), the principles and purposes of felony sentencing, R.C. 2929.11, the seriousness and recidivism factors, R.C. 2929.12, the factors in R.C. 2929.13(B)(1), and the presumption in favor of a prison term for felonies of the second degree, R.C. 2929.13(D)(1). The trial court clearly complied with all applicable rules and statutes in imposing its sentence. Furthermore, the 12-month prison terms imposed for the two fifth-degree felony offenses in case No. 2008CR341, and the eight-year prison term imposed for the second-degree felony offense in case No. 2008CR353, while the maximum allowable sentences, are within the authorized range of available punishments for felonies of the second and fifth degree. R.C. 2929.14(A)(2), (5). Defendant's sentence is not clearly and convincingly contrary to law. *Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.

{¶ 16} Defendant argues that the trial court abused its discretion in sentencing him to an eight-year prison term. Defendant points out that he has no criminal history, that none of the recidivism factors apply, R.C. 2929.12(D)and (E), and that one "less serious offense" factor applies: that he did not cause physical harm to any person. R.C. 2929.12(C)(3).

{¶ 17} An examination of the plea proceedings reveals that at the time defendant entered his guilty pleas, he was well aware that he faced a maximum sentence of ten years if maximum, consecutive sentences for his three offenses were imposed. As part of the plea agreement, the state recommended that defendant's sentences in case Nos. 2008CR341 and 2008CR353 be served concurrently, and the trial court adopted that recommendation. Furthermore, as we previously stated, the sentences imposed by the trial court were within the authorized range of available punishments for felonies of the second and fifth degree. R.C. 2929.14(A)(2), (5).

{¶ 18} The overriding purposes of felony sentencing are to protect the public from future crime by the offender and to punish the offender. R.C. 2929.11(A). Defendant complains that the information provided to the trial court that he was engaged in a nationwide check-forgery enterprise, that he was under investigation by the Secret Service for similar conduct in several other states, and that Walmart's losses nationwide exceeded $444,000 as a result of defendant's illegal activities, was unreliable hearsay. However, the trial court stated that because these investigations of defendant's alleged nationwide activities have not resulted

in convictions, and defendant is presumed innocent until proven guilty, the court would not give significant weight to those investigations in its sentencing decision.

{¶ 19} The presentence investigation report states that defendant admitted that he engaged in the criminal conduct with which he was charged in order to get back at Walmart for firing him, but he "never meant it to go this far." Defendant left Ohio in 2005 and returned April 24, 2008. Within just seven days, by May 1, 2008, defendant engaged in the fraudulent check-cashing activities in this case. Those activities resulted in an economic loss to Walmart in this case of $3,088.59, for which defendant was ordered to pay restitution.

{¶ 20} The presentence investigation report also states that defendant admitted that he had made over $300,000 the year before from his fraudulent check enterprise. Defendant objected at the sentencing proceeding that the assertion was incorrect, and that he had made no such statement. R.C. 2951.03(B)(2) authorizes the court to "permit the defendant and defendant's counsel to introduce testimony or other information that relates to any alleged factual inaccuracy contained in the report." The burden of proof regarding any inaccuracy is therefore on the defendant who alleges that the report is inaccurate. In this case, defendant could have asked to call the probation officer who prepared the report in order to correct the alleged inaccuracy. Neither defendant nor his counsel made any such request or offered any other evidence to dispute the contention in the report. The court elected to accept the information in the report. No abuse of discretion in doing that is demonstrated.

{¶ 21} The trial court found that defendant takes minimal responsibility for his conduct, minimizes his actions, and does not appreciate the seriousness of his conduct. Defendant told the trial court that it was not his intention to take advantage of anyone, but he failed to appreciate the fact that his fraudulent check-cashing activities were clearly taking advantage of Walmart. The court also concluded that defendant was feigning remorse and that he took advantage of his less sophisticated codefendants whom he used to cash the fraudulent checks, including one mentally challenged individual. Those persons were likewise victims of defendant's criminal conduct. The fact that an offender shows no genuine remorse indicates that the offender is likely to commit future crimes. R.C. 2929.12(D)(2). Protecting the public from future crime by the offender is one of the overriding purposes of felony sentencing. R.C. 2929.11(A). The trial court specifically found that there were no factors presented by defendant that overcame the presumption in favor of a prison term that applies to the second-degree felony offense of engaging in a pattern of corrupt activity.

{¶ 22} We may not ourselves have imposed maximum prison terms for these offenses, but our role is not to substitute our judgment for that of the trial

court in a matter commended to that court's exercise of its sound discretion. An appropriate sentence is such a matter. The factors in R.C. 2929.11 and 2929.12 are better considered by the court imposing a sentence, which is in a superior position to evaluate a defendant in relation to those statutory factors. We may reverse only on a finding that the court abused its discretion when imposing a sentence that the court found appropriate. The record reflects no abuse of discretion on the part of the trial court in imposing an eight-year prison term on defendant for engaging in a pattern of corrupt activity involving a fraudulent check-cashing scheme.

{¶ 23} Defendant's assignment of error is overruled. The judgment of the trial court will be affirmed.

Judgment affirmed.

FRENCH, J., concurs in judgment only.

FROELICH, J., dissents.

JUDITH L. FRENCH, J., of the Tenth District Court of Appeals, sitting by assignment.

FROELICH, Judge, dissenting.

{¶ 24} R.C. 2929.12(A) provides that a court that imposes a sentence for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of R.C. 2929.12 relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) relating to the likelihood of the offender's recidivism. In addition, the court may consider any other factors that are relevant to achieving the purposes and principles of sentencing.

{¶ 25} The presentence report ("PSI") was made a part of the record on appellant's motion. It reflects that he is 30 years old, is originally from Alabama but lives in Dayton, is single (although he has lived with his life partner for a significant number of years) with no children, completed the 12th grade, is HIV positive, is unemployed, and does not drink or use illegal drugs; his previous court involvement consists of a "theft" offense in Alabama in 1998, for which he received "unsupervised probation."

{¶ 26} The PSI writer's version of the offense relates a May 9, 2008 incident during which two subjects were in a Walmart attempting to cash a check. Officers soon stopped two vehicles, with Sims in one. Another occupant told the police that he had tried to cash a check given to him by Sims, and which the police determined to be counterfeit. Sims was arrested.

{¶ 27} Subsequent investigation determined that "Joe" (presumably Joseph Sims) was making the checks to cash; various paraphernalia associated with the counterfeiting of checks was also discovered. The writer concluded that "further investigation revealed the defendant had fabricated checks in Alabama, Georgia, Illinois, Ohio, Indiana, Washington, California, Florida, Texas and New York. The Secret Service was left to investigate further into the scope of his activities nationwide."

{¶ 28} The "Position of the Prosecuting Attorney/Police" portion of the PSI stated that "the defendant has stolen between $600,000 and $800,000 nationwide. The defendant is being investigated by the Secret Service for his activities nationwide. His criminal activities in Ohio are just a small part of his entire criminal enterprise. * * *."

{¶ 29} The defendant's statement was that he was fired from Walmart for being gay and saw the checks "as a way to get back at them." In the recommendation section, the probation officer says that the "defendant was only in Ohio for six days, but managed to steal over $17,000 in Ohio alone. The defendant admitted to making over $300,000 himself in the last year or so on the fraudulent check enterprise."

{¶ 30} R.C. 2929.12(B) provides that the court shall consider all of the following that apply to the offender, the offense, or the victim, and any other relevant factors as indicating that the offender's conduct is more serious than conduct normally constituting the offense.

{¶ 31} (1) The physical and mental injuries suffered by the victim of the offense due to the conduct of the offender were exacerbated because of the physical and mental condition or age of the victim;

{¶ 32} (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense;

{¶ 33} (3) The offender held a public office or position of trust in the community, and the offense related to that office or position;

{¶ 34} (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice;

{¶ 35} (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others;

{¶ 36} (6) The offender's relationship with the victim facilitated the offense;

{¶ 37} (7) The offender committed the offense for hire or as part of an organized criminal activity;

{¶ 38} (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion;

{¶ 39} (9) If the offense is a violation of R.C. 2929.25 or a violation of section 2903.11, 2903.12 or 2903.13 of the Revised Code, involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or a person in loco parentis of one or more of those children.

{¶ 40} The victim of Sims's offense was Walmart in the amount of just over $3,000. While this is not a minor or insignificant number and clearly over the felony amount, it cannot be considered "serious economic harm" to Walmart. None of the "more serious" factors set forth in R.C. 2929.12(B) applies to the defendant.

{¶ 41} R.C. 2929.12(C) lists certain factors indicating that the offender's conduct is less serious than conduct normally constituting the offense:

{¶ 42} (1) The victim induced or facilitated the offense;

{¶ 43} (2) In committing the offense, the offender acted under strong provocation;

{¶ 44} (3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property;

{¶ 45} (4) There was substantial grounds to mitigate the offender's conduct although the grounds are not enough to constitute a defense.

{¶ 46} The theft offenses of which the defendant was convicted "did not cause or expect to cause physical harm to any person or property."

{¶ 47} The recidivism factors are listed in R.C. 2929.12(D) and indicate the legislature's determination that the offender is likely to commit future crimes:

{¶ 48} (1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing or under postrelease control or had been unfavorably terminated from postrelease control for a prior offense;

{¶ 49} (2) The offender previously was adjudicated a delinquent child or the offender has a history of criminal convictions;

{¶ 50} (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child or the offender has not responded favorably to sanctions previously imposed through criminal convictions;

{¶ 51} (4) The offender has a demonstrated pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the

offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse;

{¶ 52} (5) The offender shows no genuine remorse for the offense.

{¶ 53} As best as can be told from the record, including a review of the presentence investigation report, Sims has no prior juvenile adjudications, and the only adult conviction (it cannot be determined whether it is a felony or misdemeanor) is a ten-year-old theft for which he received unsupervised probation; the court did remark that it felt he showed no genuine remorse for the offense.

{¶ 54} Lastly, the court shall consider the following other relevant factors indicating that the offender is not likely to commit future crimes:

{¶ 55} (1) Prior to committing the offense, the offender had not been adjudicated a delinquent child;

{¶ 56} (2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense;

{¶ 57} (3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years;

{¶ 58} (4) The offense was committed under circumstances unlikely to recur;

{¶ 59} (5) The offender shows genuine remorse for the offense.

{¶ 60} At least two of these factors, the lack of any prior juvenile record and a law-abiding life for ten years, are present in Sims's situation; conversely, the lack of genuine remorse was noted by the court.

{¶ 61} In summary, none of the "more serious" factors of R.C. 2929.12(B) is present, one of the "less serious" factors of R.C. 2929.12(C) is present, one of the "recidivism" factors of R.C. 2929.12(D) is present, one of the "more likely" factors is present, and two of the "recidivism not likely" factors of R.C. 2929.12(E) are present.

{¶ 62} The probation department's checklist included with the PSI and which similarly tracks R.C. 2929.12 listed only one factor—"history of criminal convictions or juvenile delinquency adjudications"—apparently referring to the ten-year-old theft case from Alabama.

{¶ 63} As we stated in *Barker*, 183 Ohio App.3d 414, 2009-Ohio-3511, 917 N.E.2d 324, R.C. 2929.12 grants the court discretion, and a court is no longer required to make findings or even give reasons for imposing maximum, consecutive, or more than the minimum sentences. However, the court in exercising its discretion must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and 2929.12. And in determining whether

the court appropriately considered these policies, this District follows the two-prong analysis of *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.

{¶ 64} Therefore, the trial court's exercise of its sentencing jurisdiction remains subject to appellate review on the abuse-of-discretion standard. *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144; *State v. McClain*, Montgomery App. Nos. 22551 and 22552, 2009-Ohio-64, 2009 WL 50612. In *McClain*, we modified two consecutive sentences by making them concurrent, noting that "[c]onsecutive sentences were not appropriate under the sentencing factors." Id. at ¶ 14. The concurring opinion emphasized that the "sentencing court's exercise of its sentencing discretion remains subject to appellate review on the abuse of discretion standard. * * *." Id. at ¶ 15.

{¶ 65} Subsequently, we upheld a less-than-maximum sentence against an abuse-of-discretion challenge for one count of gross sexual imposition involving a victim under age 13, *State v. Hall*, Montgomery App. No. 22788, 2009-Ohio-4601, 2009 WL 2855877. We found based on the record made by the court that the seriousness of the offense had no comparison with the non-support charges in *McClain*. Id. at ¶ 17.

{¶ 66} Indeed, the seriousness and recidivism factors are not to be equally weighed in some sort of mathematical calculation, but the record must reflect that they were considered appropriately. Discretion is given to the court to follow the legislature's mandates, and marginalizing the factors set out by the legislature constitutes an abuse of the discretion. Otherwise, the legislative factors become a rhetorical Potemkin village in which a recitation of conclusory statutory findings obscures the potential unbridled discretion the factors were intended to, at least, mitigate.

{¶ 67} The defendant pleaded guilty to a felony of the second degree and two felonies of the fifth degree. In the plea colloquy with the defendant, the court informed him that the maximum penalty was ten years. The court specifically addressed paragraph 16 of the "Petition to Enter a Plea of Guilty" that stated, "There is no agreement as to disposition, except that the State agrees that any time imposed in Case No. 2008 CR 341 will run concurrently to any time imposed on Case No. 2008 CR 353 * * *." The court informed the defendant, "The State agrees that any time imposed * * * will run concurrent * * *." Later: "Now, do you understand that the State of Ohio is bound by that position in this case, and what that means is they are going to continue with her recommendation that this—any sentence you may receive would be concurrent * * * But if you do get a prison term the State is saying they're going to recommend a concurrent sentence * * *. Now, it's important to understand while the court, let's address that specifically, may very well follow that recommendation, I am not equally

bound. I may choose to impose a concurrent sentence or I may choose not to * * *." The defendant acknowledged his understanding.

{¶ 68} Crim.R. 11(F) provides that "when * * * a negotiated plea of guilty or no contest to one or more offenses * * * is offered, the underlying agreement upon which the plea is based shall be stated on the record in open court."

{¶ 69} The confusion about the actual "negotiated plea" arises when the defendant's signing and acknowledging to the court a written representation with the prosecutor that contained a provision that included "In consideration for defendant's plea * * * the State agrees" to concurrent sentences is juxtaposed with the court's statement that this agreement is only a recommendation that the court may or may not follow, which was also acknowledged by the defendant. Because the concurrent sentences were imposed, this discrepancy is relevant only insofar as it tends to support a belief in the defendant's mind that the maximum sentence he would receive was eight years.

{¶ 70} The only rationale for imposing the maximum sentence for these nonviolent theft offenses totaling approximately $3,000 from Walmart on this offender with one prior undescribed theft ten years before was if the court had found that this was only the tip of the iceberg, and the defendant had actually been responsible for approximately $800,000 or that he was "being investigated" by various law enforcement agencies—however, the court explicitly stated: "I will note for the record that issues have been taken by the defendant with the report regarding other jurisdictions. I accept the information in the report.

{¶ 71} "I also accept the statements made by counsel. These are investigations that have not resulted in convictions. I think I should stand by the principle that a person is innocent until proven guilty, and I will not put significant weight as to that particular factor as raised by counsel."

{¶ 72} The court also noted, "I accept the fact that the presentence report indicates that the defendant admitted to making over $300,000 for himself over the last year or so doing the fraudulent check enterprise, that he feigns remorse and the defendant prays (sic) on individuals who cash the checks for him, including, in this particular case, a mentally challenged individual." The defendant denied making any such statement; I disagree with the majority that the burden was on the defendant to disprove this reported inaccuracy in the PSI. R.C. 2951.03(B)(5).

{¶ 73} A trial court may consider uncharged allegations. See, e.g., *State v. Hutton* (1990), 53 Ohio St.3d 36, 559 N.E.2d 432; *State v. Mayor*, Mahoning App. No. 07 MA 177, 2008-Ohio-7011, 2008 WL 5451377; *State v. Tolliver*, Wayne App. No. 03 CA 0017, 2003-Ohio-5050, 2003 WL 22189395. However, these uncharged incidents cannot abrogate the sentencing considerations mandated by the legisla-

ture.   Otherwise, for example, a first-time bad-check, or first-time residue-possession case could result in maximum imprisonment, ostensibly based on disputed and uncharged, let alone unproven, allegations that the defendant is a major drug dealer or wrote the check to support a terrorist organization.   This was not the legislature's intent or direction.

{¶ 74} Within the definition of an "abuse of discretion" is an "arbitrary or unconscionable attitude"; this is not a mean-spiritedness or vindictiveness, but rather one "without adequate determining principle," or one "not governed by any fixed rules or standards." *Dayton ex rel. Scandrick v. McGee* (1981), 67 Ohio St.2d 356, 359, 21 O.O.3d 225, 423 N.E.2d 1095.

{¶ 75} The mandatory sentences dictated by judicial findings have constitutionally yielded to the role of the jury.   *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403; *United States v. Booker* (2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621; *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470; *State v. Barker*, Greene App. No. 09CA1, 2009-Ohio-5036, 2009 WL 3068243.   (In the federal context, see, for example, the court's Sentencing Memorandum, which refers to the "now thoroughly discredited oxymoron-mandatory guidelines" in *United States v. West* (D.Mass.2008), 552 F.Supp.2d 74, 75.)

{¶ 76} Rather, we now have "guidelines-lite" or advisory criteria, or sentencing considerations and factors.   But in such a state of affairs, "[a]ppellate review is more important *because* the Guidelines are no longer mandatory.   * * * Now, with the advisory Guidelines and more sentencing variables, appellate review is all the more important in assuring uniformity and reducing sentencing disparities across the board."   (Emphasis sic.)   *United States v. Foreman* (C.A.6, 2006), 436 F.3d 638, 644, abrogated on other grounds, *United States v. Young* (C.A.6, 2009), 580 F.3d 373.

{¶ 77} The trial court's minimalization of the statutory factors at the sake of unsubstantiated and disputed allegations resulted in a sentence without adequate determining principles and not governed by any fixed rules or standards.   I would reverse and remand for resentencing.