RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0282p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 14-5048

DERRICK MONTEZ BALL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:13-cr-00070-1—Danny C. Reeves, District Judge.

Argued: October 3, 2014

Decided and Filed: November 17, 2014

Before: SILER, CLAY, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jeffrey C. Rager, RAGER LAW FIRM, PLLC, Lexington, Kentucky, for Appellant. Kate K. Smith, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee. **ON BRIEF:** Jeffrey C. Rager, RAGER LAW FIRM, PLLC, Lexington, Kentucky, for Appellant. Charles P. Wisdom, Jr., Ron L. Walker, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

SILER, Circuit Judge. This case concerns whether a Kentucky conviction for fleeing in a motor vehicle from the police qualifies as a violent felony under the Armed Career Criminal Act (ACCA). In 2013, Derrick Ball pleaded guilty to being a felon in possession of a firearm

1

pursuant to 18 U.S.C. § 922(g)(1).  The district court enhanced his sentence under the ACCA on account of three previous Kentucky state convictions:  (1) 1st degree trafficking in a controlled substance in Boyle County; (2) 1st degree fleeing or evading police in Boyle County; and (3) 1st degree fleeing or evading police in Mercer County.  Ball's primary argument is that his Mercer County conviction does not qualify as a crime of violence under the ACCA.  We **AFFIRM**.

**I.**

Ball's Presentence Report identified three prior state convictions that rendered him eligible for a 15-year minimum sentence as an "armed career criminal."  His sentencing range under the Guidelines was 188-235 months; the court sentenced him to 211 months.

Concerning his three Kentucky predicate convictions, Ball does not contest that his cocaine trafficking conviction qualifies as a "serious drug offense" under the ACCA.  He waived his challenge to the designation of his Boyle County fleeing and evading conviction as a violent felony, but he claims his 2008 conviction for fleeing and evading in Mercer County does not qualify as a violent felony.

The background for Ball's 2008 conviction was that he was arrested in Mercer County at the end of an automobile police chase.  He was charged with, among other crimes, fleeing or evading.  At the time, Ball was subject to an arrest warrant from Boyle County for cocaine trafficking and another incident of fleeing and evading.  As part of his plea deal to these three charges, the other charges were dismissed.  His three convictions were consolidated into a single sentence.

At his federal plea hearing, Ball made no specific admissions, and the court made no specific findings of fact regarding the circumstances underlying Ball's Mercer County fleeing and evading conviction.  The crime, "Fleeing or evading police in the first degree," is defined in Ky. Rev. Stat. § 520.095 as follows (emphases added):

(1)  A person is guilty of fleeing or evading police in the first degree:
(a) When, *while operating a motor vehicle with intent to elude or flee*, the person *knowingly or wantonly* disobeys a direction to stop his or her motor vehicle, given by a person recognized to be a police officer, and at least one (1) of the following conditions exists:

1. The person is fleeing immediately after committing an act of domestic violence as defined in KRS 403.720;

2. The person is driving under the influence of alcohol or any other substance or combination of substances in violation of KRS 189A.010;

3. The person is driving while his or her driver's license is suspended for violating KRS 189A.010; or

4. *By fleeing or eluding, the person is the cause, or creates substantial risk, of serious physical injury or death to any person or property*; or

(b) When, as a pedestrian, and with intent to elude or flee, the person knowingly or wantonly disobeys an order to stop, given by a person recognized to be a peace officer, and at least one (1) of the following conditions exists:

1. The person is fleeing immediately after committing an act of domestic violence as defined in KRS 403.720; or

2. By fleeing or eluding, the person is the cause of, or creates a substantial risk of, serious physical injury or death to any person or property.

The indictment for the Mercer County offense reads as follows (emphasis added):

That on or about the 24th day of October, 2008 in Mercer County, Kentucky the above named defendant, Derrick Ball, committed the offense of Fleeing or Evading in the First Degree when he knowingly disobeyed a police officer's order to stop his *vehicle* in an attempt to elude the police and by fleeing or eluding, *the defendant creates a substantial risk of serious physical injury to another person*.

Ball argues we should look to the *facts* of his "fleeing or evading" arrest (or lack thereof in the record) and find that it was not a violent felony. The government argues we should look to the *indictment*, which specifies that Ball pleaded to "fleeing or evading" under Ky. Rev. Stat. § 520.095(1)(a)(4), which necessarily involved a "substantial risk" of "serious physical injury" to others. Under the ACCA's "residual clause," 18 U.S.C. § 924(e)(2)(B)(ii), the government argues, this conviction qualifies as a felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another."

Ball's conviction qualifies as a violent felony for two reasons. First, we have previously indicated that the act of fleeing police in a motor vehicle is so inherently risky that felony convictions for this behavior will always qualify as "violent" under the ACCA's residual clause. *See, e.g.*, *United States v. Martin*, 378 F.3d 578, 582-83 (6th Cir. 2004). Second, even if this were not the case, one element of Ball's conviction was that his vehicle flight created "a

substantial risk of serious physical injury to another person." This element tracks the language of the residual clause and renders his conviction a violent felony.

## II.

The relevant issues are all legal questions subject to de novo review. These include the interpretation and application of the ACCA and the narrower question of whether a prior conviction qualifies as a violent felony. *United States v. Stafford*, 721 F.3d 380, 395-96 (6th Cir. 2013). While we are bound by a state court's interpretation of its own criminal statutes, whether a state crime is a violent felony under the ACCA is a question of federal law. *United States v. Rede-Mendez*, 680 F.3d 552, 555-56 (6th Cir. 2012); *see also Johnson v. United States*, 559 U.S. 133, 138 (2010). We also review challenges to the constitutionality of a statute de novo. *United States v. Bowers*, 594 F.3d 522, 527 (6th Cir. 2010).

## III.

Ball claims his sentence enhancement was unwarranted because his 2008 conviction for fleeing in a motor vehicle from the police was not a violent felony. Under the ACCA, specifically 18 U.S.C. § 924(e)(1), when a person is convicted of being a felon in possession of a firearm and also has three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another," the defendant "shall be fined under this title and imprisoned not less than fifteen years . . . ." The ACCA then defines "violent felony" in § 924(e)(2)(B):

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Ball does not contest that his Mercer County conviction was "punishable by imprisonment for a term exceeding one year."

We have adopted an analytical process for determining whether a predicate conviction qualifies as a violent felony under the ACCA. We take a "categorical approach," which means we only consider the statutory elements of the predicate crime. The specific facts underlying the conviction are irrelevant. *United States v. Davis*, 751 F.3d 769, 774-75 (6th Cir. 2014).

However, some statutory crimes are "divisible," meaning they encompass different crimes embedded in one statute. If a divisible statute contains multiple crimes, *and* if at least one of the crimes is categorically a violent felony and at least one of the crimes is not, then we employ a "modified categorical approach." *See Descamps v. United States*, 133 S. Ct. 2276, 2281-85 (2013). Under this approach, we may review a narrow category of documents, known as *Shepard* materials, to determine which crime within the statute formed the basis of the defendant's predicate conviction. *See Rede-Mendez*, 680 F.3d at 556. *Shepard* materials include only the terms of the charging document, the terms of a plea agreement, the transcript of the plea colloquy, or some comparable judicial record of this information. *Shepard v. United States*, 544 U.S. 13, 26 (2005).

The "modified categorical approach" is simply a tool that enables a court to pinpoint the elements of the crime that the defendant "necessarily admitted" so the court can apply the categorical approach. *Davis*, 751 F.3d at 775-77. Application of the ACCA turns upon the defendant's prior "convictions," not upon the defendant's prior conduct, *see* 18 U.S.C. § 924(e)(1), so the purpose of the modified categorical approach is to determine not what the defendant did when he committed his prior offense but simply which part of a divisible statute he was convicted under. *Davis*, 751 F.3d at 776-77. Again, the modified categorical approach is appropriate only when a divisible statute can be violated in at least one way that would be a violent felony and at least one way that would not be a violent felony. *United States v. Mitchell*, 743 F.3d 1054, 1065 (6th Cir. 2014).

In this case, the Kentucky statute at issue contains several sub-parts. *See* Ky. Rev. Stat. § 520.095. It has two main divisions. Subsection (1)(a) encompasses fleeing in a motor vehicle, while subsection (1)(b) encompasses fleeing "as a pedestrian." Subsection (1)(a), in turn, has four sub-parts, and subsection (1)(b) has two subparts. Applying the standards we will discuss below, it appears that a violation of subsection (1)(a) would be a categorical violent felony, but a

violation of subsection (1)(b) would not. This is particularly true of subsection 520.095(1)(b)(1), which criminalizes fleeing on foot "immediately after committing an act of domestic violence." Because a person can violate section 520.095 in at least one manner that may not qualify as a categorical violent felony under the ACCA, we must apply the modified categorical approach to ascertain which sub-part of the statute formed the basis of Ball's conviction.

The record in this case contains the indictment for Ball's Mercer County fleeing or evading conviction. Ball pleaded guilty to subsection (1)(a)(4) of Ky. Rev. Stat. § 520.095. This subsection makes it a crime to flee police in a motor vehicle in a manner that "cause[s] or creates substantial risk[] of serious physical injury or death to any person or property." Using nearly identical language, the indictment accuses Ball of fleeing or evading in "his vehicle" in a manner that "create[d] a substantial risk of serious physical injury to another person." Having pinpointed the elements of Ball's predicate crime, the question then becomes whether a violation of this subsection (a Class-D felony) qualifies as a violent felony under the ACCA.

There are three ways a felony may qualify as "violent" under the ACCA. First, the felony can satisfy the "use of physical force" clause of 18 U.S.C. § 924(e)(2)(B)(i). Second, the felony may be among the four enumerated offenses in the first part of § 924(e)(2)(B)(ii) (burglary, arson, extortion, or crimes involving explosives). Third, the felony could satisfy the residual clause at the end of § 924(e)(2)(B)(ii) (a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another"). The government in this case does not invoke the "use of physical force" clause. *See Sykes v. United States*, 131 S. Ct. 2267, 2273 (2011) ("Resisting law enforcement through felonious vehicle flight does not meet the requirements of [the physical force clause]"). And the crime is not among the four enumerated offenses. Rather, the government's position is that Ball's Mercer County conviction qualifies as a violent felony under the "residual clause" of § 924(e)(1)(B)(ii). The language of the ACCA's residual clause is almost identical to language that defines a "crime of violence" under the "career offender" enhancement of the United States Sentencing Guidelines (USSG §§ 4B1.1, 4B1.2), so we handle both provisions identically. *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995).

Determining whether a crime fits within the ACCA's residual clause involves a two-step inquiry. *See Stafford*, 721 F.3d at 399. The first step asks whether the predicate offense, as defined by statute, "presents a serious potential risk of physical injury to another." *Mitchell*, 743 F.3d at 1060. The crime need not actually *result* in physical injury; the residual clause requires only "a serious *potential* risk of physical injury." *United States v. Taylor*, 696 F.3d 628, 632 (6th Cir. 2012); *United States v. Payne*, 163 F.3d 371, 375 (6th Cir. 1998).

The Kentucky statute meets the standard of step one for two reasons. First, the relevant subsection criminalizes fleeing in a motor vehicle from the police when the defendant "is the cause of, or creates substantial risk, of serious physical injury or death to any person or property." Ky. Rev. Stat. § 520.095(1)(a)(4). The Kentucky Supreme Court has defined "substantial risk" under section 520.095 as risk that is ample, considerable in degree or extent, and true or real, as opposed to imaginary. *Bell v. Commonwealth*, 122 S.W.3d 490, 497 (Ky. 2003). Additionally, Ky. Rev. Stat. § 500.080(15) defines "serious physical injury" as "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." Clearly, behavior that poses an ample, considerable, and true risk of physical injury or death under Kentucky law also poses "a serious *potential* risk of physical injury" under the ACCA.

Second, we have previously explained that all felonies that involve fleeing from the police in a motor vehicle qualify as violent felonies under the ACCA. "When a motorist disobeys an officer and flees in his car . . . that person creates a conspicuous potential risk of injury to pedestrians, vehicles sharing the road, passengers in the fleeing car and the pursuing officer." *Martin*, 378 F.3d at 582. Not only does the "flight itself" create a "palpable risk of physical injury to others," but "so too does the suspect's eventual apprehension," because the motorist has provoked an "inevitable, escalated confrontation" with the pursuing officer. *Id*. Even if a vehicular flight statute may technically be violated by conduct that is "passive, non-violent, and non-threatening," this does not diminish the inherent potential risk of vehicle flight. *Id*. at 583. Vehicle flight from an officer is "inherently an aggressive and violent act." *United States v. Young*, 580 F.3d 373, 378 (6th Cir. 2009) (quoting *United States v. Roseboro*, 551 F.3d

226, 240 (4th Cir. 2009)).  Because fleeing in a motor vehicle from the police always carries serious potential risk of injury, Ball's crime would create "a serious potential risk of physical injury," even without the Kentucky statute's standalone element of "substantial risk[] of serious physical injury."  *See Sykes*, 131 S. Ct. at 2276; *United States v. Doyle*, 678 F.3d 429, 435 (6th Cir. 2012).

We have determined under the first step of the residual clause analysis that Ball's Mercer County conviction was for a felony that "presents a serious potential risk of physical injury to another."  We therefore proceed to step two.

For a crime to qualify as a violent felony under step two of the residual clause analysis, the crime "must also be similar 'in kind as well as in degree of risk posed'" to the crimes enumerated in 18 U.S.C. § 924(e)(2)(B)(ii), *e.g.*, burglary, arson, extortion, and crimes involving explosives.  *United States v. Vanhook*, 640 F.3d 706, 710 (6th Cir. 2011) (quoting *Begay v. United States*, 553 U.S. 137, 143 (2008)).  The Supreme Court has proffered two different standards for determining whether a given crime's riskiness is comparable to the enumerated crimes.  First, in *Begay*, the Court held that driving under the influence (DUI) was not an ACCA violent felony because DUI is not "purposeful, violent, and aggressive."  *Begay*, 553 U.S. at 144-45.  But later, in *Sykes*, the Court distinguished DUI from "flight from a law enforcement officer" under an Indiana statute.  The Court explained that DUI was "a crime akin to strict liability, negligence, and recklessness crimes."  131 S. Ct. at 2276.  When a crime carries a specific *mens rea*, the Court explained, the inquiry is not whether the crime was purposeful, violent, and aggressive.  Instead, courts should compare the risk posed by the crime in question to the risk posed by its closest analog among the ACCA's enumerated offenses.  *Id*. at 2273.  We have interpreted *Sykes* to mean that the *Begay* standard applies only to crimes that lack a specific *mens rea*.  *See Mitchell*, 743 F.3d at 1061; *United States v. Evans*, 699 F.3d 858, 865 (6th Cir. 2012); *United States v. Meeks*, 664 F.3d 1067, 1070-71 (6th Cir. 2012); *see also United States v. Spencer*, 724 F.3d 1133, 1139 & n.4 (9th Cir. 2013) (collecting cases from various Circuits holding that the *Begay* formula "is only dispositive in cases involving a strict liability, negligence, or recklessness offense").  *But see United States v. Covington*, 738 F.3d 759, 765 (6th Cir. 2014) (reasoning that the *Sykes* and *Begay* standards are "supplementary" and that the

*Begay* standard may still apply to crimes that include a specific *mens rea* when doing so would not be redundant).

Ball's crime does not lack a specific *mens rea*. The statute says the fleeing must be done "knowingly or wantonly." Ky. Rev. Stat. § 520.095(1)(a). Kentucky law differentiates wanton behavior from reckless behavior. Ky. Rev. Stat. § 501.020 (explaining that wanton behavior involves a "conscious[] disregard" for a substantial and unjustifiable risk, while reckless behavior involves a failure to perceive the risk). Because the statute has a specific *mens rea* that does not encompass strict liability, negligence, or recklessness, we will apply the *Sykes* test.

The question for step two under *Sykes* is whether the crime carries a level of risk similar to crimes such as burglary, arson, extortion, or explosives. Here, we find no reason to depart from the Supreme Court's observation that "[s]erious and substantial risks are an inherent part of vehicle flight." *Sykes*, 131 S. Ct. at 2276. As it explained, "Risk of violence is inherent to vehicle flight. Between the confrontations that initiate and terminate the incident, the intervening pursuit creates high risks of crashes." *Id*. at 2274. The Court in *Sykes* therefore reasoned, and illustrated from statistics, that vehicle flight poses a greater risk to human life than burglary and arson. *Id*. at 2273-75. The Court upheld Mr. Sykes's ACCA designation, even though he was not prosecuted under the subsection of the Indiana "resisting law enforcement statute" that specified the offense "create[d] a substantial risk of bodily injury." *Id*. at 2276; *see also Doyle*, 678 F.3d at 434 (finding that vehicle flight under a Tennessee statute qualified as a violent felony, even when it did not involve the element of "creat[ing] a risk of death or injury to . . . third parties").

We also have held that vehicle flight inherently carries an enormous risk of potential injury. We previously considered analogous vehicle flight statutes from Michigan and Tennessee, and found them to be categorically violent felonies. *Doyle*, 678 F.3d at 432-33 (considering Tenn. Code Ann. § 39-16-603(b)(1), a Class-E felony); *Young*, 580 F.3d at 376-78 (considering Mich. Comp. L. § 257.602a, and finding that even an "ordinary violation" of Michigan's vehicle flight statute "is inherently an aggressive and violent act . . . that poses a serious potential risk of physical injury to others" (internal quotation marks and citation omitted)); *United States v. LaCasse*, 567 F.3d 763 (6th Cir. 2009) (considering Mich. Comp. L.

§ 750.479a); *Martin*, 378 F.3d at 582-84 (considering Mich. Comp. L. § 750.479a); *see also United States v. Bass*, 378 F. App'x 551, 552 (6th Cir. 2010) (explaining that all three subsections of Michigan's third-degree vehicle flight statute are "categorically crimes of violence").

We therefore conclude that Kentucky's vehicle flight statute likewise qualifies as a violent felony under the ACCA—regardless of whether the violation entailed subsection (a)(4)'s additional element of causing or creating a substantial risk of serious physical injury or death. As we found in *Doyle* and *Young*, even vehicle flight *simpliciter* presents a risk similar in degree and kind to both burglary and arson. *Doyle*, 678 F.3d at 435-36 (quoting *Sykes*, 131 S. Ct. at 2273-74); *Young*, 580 F.3d at 376-79.

Even were this not the case, Ball's indictment makes clear that he pleaded guilty to a crime that not only carried a *potential* risk similar in magnitude to the ACCA's enumerated crimes, he actually created a "substantial"—or ample, considerable, and true—risk of serious injury or death to others. *See Bell*, 122 S.W.3d at 497. We find no legal basis to overrule the district court's determination that Ball's predicate crime qualifies as a violent felony under the ACCA.

## IV.

Next, Ball argues that the ACCA is unconstitutional because it is void for vagueness. He says the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) "simply does not give a person of ordinary intelligence the proper notice of what types of crimes would 'otherwise involve[] conduct that presents a serious potential risk of physical injury to another.'" *See Kolender v. Lawson*, 461 U.S. 352, 361 (1983) (finding a criminal statute "unconstitutionally vague on its face because it encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute").

We have previously found this argument unpersuasive and upheld the constitutionality of the residual clause. *United States v. Phillips*, 752 F.3d 1047, 1051 (6th Cir. 2014); *Stafford*, 721 F.3d at 403; *see also Sykes*, 131 S. Ct. at 2277; *James v. United States*, 550 U.S. 192, 210 n. 6 (2007). We do not revisit that conclusion here.

**V.**

Ball argues that because the sentencing court must consider additional facts beyond the felon-in-possession conviction to determine whether the ACCA enhancement applies, and because the finding raises the penalty for being a felon in possession of a firearm, the Sixth Amendment requires that the facts be found by a jury beyond a reasonable doubt.  We have also rejected this argument.  *See United States v. Elliott*, 757 F.3d 492, 496-97 (6th Cir. 2014); *United States v. Barnett*, 398 F.3d 516, 524-25 (6th Cir. 2005); *see also United States v. Hollingsworth*, 414 F.3d 621, 624 (6th Cir. 2005).  A court may enhance a defendant's sentence when that enhancement is based on the fact of a prior conviction.  *Alleyne v. United States*, 133 S. Ct. 2151, 2160 n.1 (2013) (citing *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)).

**VI.**

The next issue is whether the residual clause creates an unconstitutional delegation of legislative powers to the courts.  Ball argues that the ACCA impermissibly "delegates to Courts the power to set the minimum and maximum penalty for an offense by deciding which of thousands of state and federal offenses" qualify under the residual clause.  *See Mistretta v. United States*, 488 U.S. 361, 396 (1989) (finding the USSG constitutional).  But we have previously rejected the argument that the residual clause entails "an unconstitutional delegation of legislative power to the courts."  *United States v. Castner*, 19 F.3d 1434, 1994 WL 102963, at *2 (6th Cir. 1994) (unpublished table opinion); *see also United States v. Baker*, 850 F.2d 1365, 1372 (9th Cir. 1988).

**VII.**

Ball claims the mandatory nature of the ACCA sentence enhancement makes it unconstitutional.  He says the minimum-sentence provision unconstitutionally limits judicial discretion in sentencing.  We have already "flatly rejected" that argument.  *United States v. Cecil*, 615 F.3d 678, 696 (6th Cir. 2010).  Congress "has the power to fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is subject to congressional control."  *Mistretta*, 488 U.S. at 364 (internal citation omitted).

**VIII.**

Ball next points to 18 U.S.C. § 3553(a). Known as the "parsimony provision," this statute directs courts to "impose a sentence sufficient, but not greater than necessary," to reflect several factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Ball says the ACCA's minimum sentence provision conflicts with the parsimony provision. He says this conflict creates an ambiguity which should be resolved in the defendant's favor under the rule of lenity.

However, when it comes to rigid minimum sentences, while "we acknowledge the tension with section 3553(a), . . . that very general statute cannot be understood to authorize courts to sentence below minimums specifically prescribed by Congress." *United States v. Marshall*, 736 F.3d 492, 500-01 (6th Cir. 2013) (quoting *Cecil*, 615 F.3d at 695). In other words, the ACCA controls, despite the existence of the parsimony provision.

The rule of lenity, which counsels that hopelessly ambiguous statutes are to be construed in favor of defendants, is not applicable here because the ACCA is insufficiently vague. "In evaluating whether a statute is ambiguous for rule-of-lenity purposes, it is not enough for the plain language to be unclear; only when the plain language, structure, and legislative history provide no guidance will we apply the rule of lenity." *United States v. King*, 516 F.3d 425, 432 (6th Cir. 2008) (quoting *United States v. Wagner*, 382 F.3d 598, 610 (6th Cir. 2004)).

**IX.**

The final issue concerns notice. Ball complains that the government failed to alert him prior to his plea colloquy that it planned to seek an ACCA sentence enhancement. He admits he failed to preserve this claim, so we may review it only for plain error. *See United States v. Brock*, 501 F.3d 762, 773 (6th Cir. 2007).

There is no error here, plain or otherwise, because the government is not required to provide notice of an ACCA sentence enhancement. *United States v. Mauldin*, 109 F.3d 1159, 1163 (6th Cir. 1997). Ball relies on 21 U.S.C. § 851(a)(1) (emphasis added), which states that "[n]o person who stands convicted of an offense *under this part* shall be sentenced to increased punishment by reason of one or more prior convictions" unless the government serves notice. Ball's federal conviction is a firearm violation under Title 18, not Title 21. The notice provision from Title 21 is inapplicable to Ball's conviction because being a felon in possession is not "an offense under this part."

**AFFIRMED.**