**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0043n.06

No. 14-1439

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jan 13, 2015*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| CARL SHAW-VINCENT SIX, | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |

**BEFORE**: COLE, Chief Judge; KETHLEDGE, Circuit Judge; and OLIVER, District Judge.[*]

**OLIVER, District Judge.** Defendant-Appellant Carl Shaw-Vincent Six ("Defendant-Appellant," "Defendant," "Appellant," or "Six"), appeals his conviction in district court for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) and denial of his Motion for New Trial. For the reasons stated herein, we **AFFIRM** the judgment of the district court and the district court's denial of his Motion for New Trial.

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant was indicted on March 21, 2012, for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Government alleged that Defendant was returning to his neighborhood where a shooting had previously occurred when he was arrested and found in possession of a nine-millimeter handgun. The Government also alleged that Defendant was

---

[*] The Honorable Solomon Oliver, Jr., Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

returning to the neighborhood to retaliate against the gang who was responsible for the shooting. Defendant maintains that he was not aware there were guns in his van. He asserts that he had begun to drive his friend, Frank Natale ("Natale"), to the hospital because he thought Natale had been injured during a shooting in front of Defendant's mother's house. When he realized that Natale had not been shot, he decided to return to his mother's house. Defendant asserts that all the guns in the van belonged to Natale and were never in Defendant's actual or constructive possession.

The trial began on October 29, 2012, and lasted two days. The Government called three witnesses: Monica Ann Bullock ("Bullock"), Officer Kevin Smith ("Officer Smith"), and ATF Special Agent John Miller ("Agent Miller"). Bullock, the police dispatcher, was used to authenticate a recording of a 911 call reporting a shooting just prior to Defendant's arrest.

Officer Smith gave testimony describing Defendant's arrest on the night of the offense. He testified that he and his partner were dispatched in response to calls regarding a shooting. He stated that the callers mentioned an "unknown male white above 5'10" wearing a black hat and had [a] gun [sic]" driving a black minivan. He also testified that he pulled in front of the van, partially blocking it, and asked Defendant if he had a driver's license. According to Officer Smith, Defendant replied "no" as Officer Smith was getting out of the vehicle. Officer Smith testified that as he approached the van with his gun drawn, he saw someone "shuffling" in the back of the van. That person was Natale, a passenger in the van. Officer Smith said that he then saw a firearm sticking out of Natale's pocket. He stated that he grabbed the firearm and gave it to his partner after she handcuffed Natale. He also testified that, after Natale was handcuffed, he opened the driver's door and ordered Defendant out of the van. According to Officer Smith, that is when he saw a nine-millimeter handgun on the driver's seat. Agent Miller testified that the

nine-millimeter gun recovered from the driver's seat was manufactured in Florida and could not have been manufactured in Michigan.

The Defense called three witnesses: Rolando Ortiz ("Ortiz") and Curtis Vanderlaan ("Vanderlaan"), who were both inside of Defendant's mother's ("Ms. Six") house when the alleged shooting occurred, and Defendant. Ortiz testified that he came out of the house after he heard gunshots. He also testified that he saw Natale with two guns and that Natale ran and jumped in the van in which Defendant was sleeping. Vanderlaan gave similar testimony about the immediate aftermath of the shooting, indicating he saw Natale with two guns—one "long gun" and one "short gun." Vanderlaan also testified that he saw the arrest through the window of Ms. Six's house. According to Vanderlaan, Officer Smith pulled Defendant out of the driver's seat *before* approaching Natale, who was in the back of the van—not after Natale was handcuffed, as Officer Smith testified.

Defendant testified that he was sleeping in a black minivan in the driveway of his mother's house when he was awakened by gunshots. According to Defendant, Natale jumped in the van and told him to "drive, drive, drive, drive." Defendant testified that he thought Natale was shot so he started driving towards the hospital. He further testified that once he realized Natale was not shot, he proceeded to drive back to his mother's house where he was previously parked. According to Defendant, he was on his way back to the house when Officer Smith and his partner pulled in front of his vehicle and shined a bright light on him.

Consistent with Vanderlaan's testimony, Defendant testified that Officer Smith pulled him out of the car almost immediately. According to Defendant, he was already secured in the back of one of the squad cars when the officers pulled Natale out of the van. Thereafter, the officers searched Natale and the van. Defendant testified that he never had a gun in his

possession or knew there were guns in the van. During cross-examination, Defendant testified that he did not see any guns that night, but stated: "after I was detained, put in the vehicle, I seen one officer like he said pull something and probably put it in his back pocket or out of [Natale]'s pocket." Also on cross-examination, Defendant testified that he saw the police "collect the guns and go to the vehicles or to the back of their cruiser and secure them ***I guess from what they say***." (emphasis added).

A jury found Defendant guilty on October 30, 2012. Defendant subsequently replaced his counsel and filed a Motion for New Trial on January 24, 2013. Defendant set forth the following arguments: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; (3) cumulative effect of errors; (4) verdict against the great weight of the evidence; and (5) insufficient evidence as a matter of law. Defendant's ineffective assistance of counsel claim was based on his trial counsel's, Amy Gierhart ("Gierhart"), failure to fully investigate a "*res gestae*" witness, Ms. Six's neighbor, Harry Irizarry ("Irizarry"). The district court held a hearing regarding the Motion on April 23, 2013, at which Irizarry and Gierhart both testified. The district court issued a written opinion denying the Motion in its entirety on October 18, 2013. Defendant filed the current appeal on April 14, 2014.

## II. ANALYSIS

Defendant raises five arguments on appeal. First, Defendant argues that he was denied his right to effective assistance of counsel under the Sixth Amendment because his trial counsel failed to fully investigate an exculpatory "*res gestae*" witness. Second, Defendant argues that his right to due process, right to remain silent, and right to confrontation under the Fifth, Sixth, and Fourteenth Amendments were denied due to prosecutorial misconduct. Third, Defendant argues that the cumulative effect of the errors made during his trial produced a setting that was

4

fundamentally unfair in violation of the Fifth and Fourteenth Amendments. Fourth, Defendant argues that the district court violated his right to due process under the Fifth and Fourteenth Amendments by denying Defendant's Motion for New Trial. Finally, Defendant argues that his right to due process under the Fifth and Fourteenth Amendments was violated by his conviction upon evidence that was insufficient as a matter of law.

Though unclear, it appears that Defendant-Appellant is both directly appealing his conviction and appealing the district court's denial of his Motion for New Trial on all issues, except one, the issue relating to the verdict being against the great weight of the evidence. That issue is only being raised in respect to denial of his Motion for New Trial. Defendant-Appellant does not appeal his conviction on the ground that the verdict was against the great weight of the evidence, as this argument purely appeals the district court's denial of his Motion for New Trial. On direct appeal, this court reviews findings of law and mixed findings of law and fact *de novo*. *See United States v. Ball*, 771 F.3d 964, 967 (6th Cir. 2014). This court reviews a district court's denial of a motion for new trial for abuse of discretion. *United States v. Holder*, 657 F.3d 322, 328 (6th Cir. 2011). Abuse of discretion exists where the district court relied on "clearly erroneous findings of fact," used an erroneous legal standard, or improperly applied the law. *Id.* (quoting *United States v. Pugh*, 405 F.3d 390, 397 (6th Cir. 2005)).

### A. Ineffective Assistance of Counsel

The district court denied Defendant's ineffective assistance of counsel claim, holding that Gierhart's decision to not further investigate Irizarry or call him as a witness was a rational, strategic decision. The court specifically found that Gierhart called and spoke with Irizarry and concluded that Irizarry did not reveal that he knew anything about the issues she felt were critical to the case, and that using Irizarry as a witness could possibly allow the introduction into

evidence of 911 calls implicating Defendant in the earlier shooting. The court also found it rational for Gierhart to decide that Irizarry's close relationship to Defendant and Defendant's mother would have had a substantial effect on his believability. Given these facts, the court finds that the district court did not abuse its discretion.

To prove ineffective assistance of counsel, Defendant must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To warrant reversal of a conviction, Defendant must satisfy a two-part test. First, Defendant must show that counsel was deficient and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, Defendant must show that counsel's deficient representation prejudiced Defendant; specifically, that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

In conducting the first part of the analysis, the Supreme Court has stated that the appropriate "standard for attorney performance is that of reasonably effective assistance." *Id.* To show deficient representation, Defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Defendant must identify the specific acts or omissions that allegedly violated the objective standard of reasonableness. *Id.* at 690. Defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

In an ineffective assistance of counsel claim based on a failure to investigate, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. The reasonableness of counsel's decisions

may depend on the defendant's statements or actions. *Id.* Where a defendant has given counsel reason to believe that further investigation would be futile or harmful, the defendant cannot later challenge counsel's decision not to further investigate. *Id.*

Defendant argues that his trial counsel, Gierhart, was ineffective for failing to fully investigate Irizarry, an important exculpatory witness who observed Defendant's arrest. Defendant contends that Irizarry could have corroborated Defendant's and Vanderlaan's version of the arrest—that Defendant was pulled out of the car, arrested, handcuffed, and put inside the squad car before the police ever found Natale or searched the van.

Gierhart asserts that the decision not to further investigate Irizarry was strategic. Specifically, Gierhart testified at the evidentiary hearing that she called and spoke with Irizarry, at which time she asked him an open-ended question to determine what he witnessed. According to Gierhart, Irizarry only gave an account of hearing gun shots and seeing an additional dark van speeding away afterwards. Irizarry made no mention of seeing Defendant's arrest or police search. Irizarry also told her that he was very close with Defendant's mother and considered her a sister and Defendant a nephew. Gierhart chose not to use Irizarry as a witness because she believed that: (1) Irizarry's potential testimony was irrelevant; (2) his potential testimony regarding his observation of another van in the area at the time of the shooting might have allowed the Government to introduce the contents of 911 calls implicating Defendant in the shooting; and (3) Irizarry's close relationship with Defendant and Defendant's mother made Irizarry easily impeachable.

Gierhart exercised reasonable judgment in deciding not to further investigate Irizarry or call him as a witness. Unlike in *Towns v. Smith*, 395 F.3d 251 (6th Cir. 2005), where this court found counsel's assistance to be ineffective because defense counsel failed to call or speak to a

witness who counsel knew may have had exculpatory information, Gierhart called and spoke with Irizarry to reasonably determine whether Irizarry would be helpful to Defendant's case. It was based on information obtained during that call that Gierhart decided not to further investigate Irizarry or call him as a witness. It is not the court's duty to second-guess Gierhart's strategic decisions but, instead, to decide whether they were in fact strategic decisions and not neglect. Based on the above circumstances and the reasoning provided by Gierhart, the court finds Gierhart's decision to be both strategic and reasonable.

Even if Gierhart's failure to further investigate Irizarry was unreasonable, it did not prejudice Defendant. To show prejudice, Defendant has to show more than the fact that Gierhart's errors had "*some conceivable* effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693 (emphasis added). Rather, the Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Based on Irizarry's testimony at the evidentiary hearing, his testimony at trial would have been largely redundant of the accounts given by Vanderlaan and Defendant. It is also not likely the jury would have found his testimony credible. First, Irizarry provided conflicting accounts of Defendant's arrest, including key details, such as whether the police pulled in front or behind of Defendant's van and whether he actually witnessed the entire incident. Further, Irizarry had a close relationship with Defendant that could have been used to impeach his credibility as a witness. Therefore, it is not reasonably probable that Irizarry's testimony would have changed the result of Defendant's trial.

The court finds no clearly erroneous findings of fact, use of erroneous legal standards, or improper application of law by the district court, and therefore, no abuse of discretion. Thus, this

8

court denies Appellant's claim of ineffective assistance of counsel and affirms the district court's denial of Defendant's Motion for New Trial on this issue.

## B. Prosecutorial Misconduct

Defendant argues that prosecutorial misconduct during his trial denied him of his right to due process, right to remain silent, and right to confrontation under the Fifth, Sixth, and Fourteenth Amendments. Generally, on direct appeal, this court reviews whether prosecutorial misconduct requires reversal of a defendant's conviction *de novo*. *United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir. 2002). However, if the appellant failed to raise its prosecutorial misconduct objection at trial, the appellate court reviews the claim for plain error. *United States v. Barnes*, 278 F.3d 644, 646 (6th Cir. 2002).

Defendant-Appellant makes two prosecutorial misconduct arguments: (1) it was prosecutorial misconduct for the Government to comment during closing arguments on Defendant's post-arrest silence; and (2) the Government elicited prejudicial testimony from Defendant, Ortiz, and Vanderlaan by asking questions on cross-examination that implied that Defendant, Ortiz, and Vanderlaan were gang members. Defendant made a prosecutorial misconduct objection at trial to the Government's mention of Defendant's post-arrest silence. However, Defendant raises his latter prosecutorial misconduct argument for the first time on appeal.

### 1. Comments on Post-Arrest Silence

During closing arguments, counsel for the Government made the following statement:

> And you heard the testimony of Mr. Six himself who doesn't know how this firearm ended up on his seat, no idea. And he's immediately pulled out of the van and he doesn't see Officer Smith even grab the gun. And you didn't hear any testimony from Mr. Six that when the gun was found, that he protested that's not my gun, where did you guys find that?

9

There is no dispute that Defendant properly raised his prosecutorial-misconduct objection to Government's mention, in closing arguments, of Defendant's post-arrest silence. In denying Defendant's Motion for New Trial, the district court held that the Government's remarks were not improper because they were used for impeachment purposes to rebut Defendant's theory of the case. The district court also held that, even if the remarks were unreasonable, they were not flagrant because Defendant had the opportunity to relay his own version of events in his testimony, which prevented any prejudice or jury confusion. This court finds the district court's reasoning for denying Defendant's Motion well-taken and reaches a similar conclusion in the court's direct appeal analysis of Defendant's conviction.

A direct appeal for prosecutorial misconduct is reviewed *de novo*. *See United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). Under *de novo* review, the court must first determine "whether the prosecutor's conduct and remarks were improper." *Id.* If so, the court must next determine whether the conduct and remarks were flagrant and warrant reversal. *Id.* In determining flagrancy, the court considers: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *Id.* If flagrant, the court *must* reverse. *United States v. Stover*, 474 F.3d 904, 915 (6th Cir. 2007). If the prosecutor's conduct and remarks were not flagrant, the "[c]ourt will only reverse if '[(1)] proof of the defendant's guilt was not overwhelming, [(2)] the defendant objected to the improper remarks, and [(3)] the court failed to cure the error with an admonishment to the jury.' " *Id.* (quoting *United States v. Carroll*, 26 F.3d 1380, 1390 (6th Cir. 1994)) (brackets omitted).

Defendant argues that the Government's mention of Defendant's post-arrest silence was an improper violation of the Fifth Amendment that "shifted the burden of proof to the Defendant and violated Defendant's right to confrontation." (Appellant's Br. at 11.) The Government argues that mention of Defendant's silence was a proper use of "pre-*Miranda* silence" to impeach Defendant's credibility as a witness and fairly reply to Defendant's theory of the case. (Appellee's Br. at 26.) Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. It is well-settled that a defendant's post-arrest, post-*Miranda* silence cannot be used at trial to substantively imply the defendant's guilt or impeach the defendant's credibility as a witness. *Doyle v. Ohio*, 426 U.S. 610, 611 (1976); *Griffin v. California*, 380 U.S. 609, 615 (1965). This Circuit has also held that it is a violation of the Fifth Amendment to use pre-arrest silence as substantive evidence of guilt. *Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2000). However, a prosecutor may reference a defendant's post-arrest, pre-*Miranda* silence to impeach that defendant's credibility on cross-examination. *Fletcher v. Weir*, 455 U.S. 603, 605–07 (1982). A prosecutor may also reference a defendant's choice to remain silent if it is a *fair* reply to the defense's theory of the case or legal argument—such as the defense's assertion that the defendant was not given the opportunity to speak on his or her own behalf. *Hall v. Vasbinder*, 563 F.3d 222, 233 (6th Cir. 2009) (citing *United States v. Robinson*, 485 U.S. 25, 34 (1988); *Lockett v. Ohio*, 438 U.S. 586, 595 (1978)). Such reply is limited to the scope of the defendant's theory or argument. *Id.* at 233.

Here, the Government did not mention Defendant's post-arrest silence during cross-examination and, instead, raised the issue for the first time during closing arguments. The Government relies primarily on *Seymour v. Walker*, 224 F.3d 542, 559–60 (6th Cir. 2000), in arguing that it is proper for the prosecutor to mention the defendant's post-arrest, pre-*Miranda*

silence to impeach the defendant's credibility as a witness, even if done for the first time during closing arguments. In *Seymour*, this court rejected a request for habeas corpus relief based on prosecutorial misconduct. The court held that the prosecutor's mention during closing arguments of the defendant's failure to claim self-defense at the time of the murder was proper as an impeachment of defendant's credibility as a witness, not proof of substantive guilt, and thus did not warrant reversal. *Seymour*, 224 F.3d at 560.

Defendant objects to the following statement made by Government's counsel during closing argument: "And you didn't hear any testimony from Mr. Six that when the gun was found, that he protested that's not my gun, where did you guys find that?" Defendant maintains that this statement could not be used to attack his pre-*Miranda* silence because he testified that he did not see any firearms that night and that he did not see the police seize any firearms from his vehicle that night. However, the Government points to the fact that during cross-examination, Six testified, "I seen them collect the guns and go to the vehicle or to the back of their cruiser and secure them I guess from what they say." Defendant counters by arguing that his above-mentioned statement was only meant to indicate that he saw that something was being recovered by the police and that he only found out after the fact that he had been watching the police officers secure the guns. Defendant also suggests that before the Government could attempt to impeach his testimony, it would have first had to ask him if he had made any comment upon observing the guns being removed from his vehicle.

In light of the fact that Six was adamant in his testimony that he did not know that there were guns in his vehicle and that his statement could be construed as an admission that he saw the police remove guns from his vehicle, it was not improper for the Government to attempt to impeach the Defendant by showing that when he saw the officers recover the guns, he showed no

surprise or bewilderment. The statement made by the Government's counsel regarding Defendant's silence was not made as a comment on substantive evidence but served to challenge Defendant's testimony that he did not know that guns were in his vehicle. In light of *Seymour*, the court finds that such use of Defendant's pre-*Miranda* silence was not improper as impeachment. Further, as in *Seymour*, it was not improper for the Government's counsel to raise the issue in closing argument. There is no requirement that the Government's counsel first ask Defendant if he made any comments upon observing the guns being removed from the vehicle during cross-examination as a predicate to the Government's argument in closing.

Thus, this court finds no prosecutorial misconduct based on the Government's remarks during closing arguments, nor any abuse of discretion by the district court in denying Defendant's Motion for New Trial.

## 2. Implied Gang Affiliation During Cross-Examination

Because Defendant did not make a prosecutorial misconduct objection to the Government's gang-affiliation questioning at trial, the issue is reviewed for plain error. *Barnes*, 278 F.3d at 646. To succeed under a plain error review, the appellant must show that (1) an error occurred during trial, (2) the error was plain, (3) the error "affected the defendant's substantial rights," and (4) the error "seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Id.* The term " '[p]lain' is synonymous with 'clear' or, equivalently, 'obvious.' " *United States v. Olano*, 507 U.S. 725, 734 (1993).

Defendant argues that it was plain error for the Government to ask Ortiz, Vanderlaan, and Defendant several questions about possible gang involvement, and for the Government to attempt to impeach Ortiz's denial of gang involvement by questioning him about pictures

showing Ortiz making hand gestures. Defendant argues that such questioning elicited irrelevant and prejudicial testimony. This court finds Defendant's argument not to be well-taken.

First, the line of questioning was not irrelevant or improper. The Government's theory of the case was that Defendant and Natale were never headed to the hospital and, instead, were seeking retaliation for a gang-related shooting that had just occurred. Establishing gang involvement on the parts of the witnesses, including Defendant, was relevant to this theory. Further, gang affiliation was also a possible motive for bias on behalf of the witnesses and could be used to impeach their credibility.

Second, the photos of Ortiz were never admitted into evidence. Though the Government did use them in an attempt to impeach Ortiz on the issue of his gang affiliation, the Government also withdrew their request to submit them as evidence or show them to the jury when Defendant's counsel objected on the grounds that there was no expert witness to verify that the hand gestures were gang signs. Because the jury did not see the photos, there is no indication that they prejudiced the Defendant or had any substantial effect on the proceedings. Since a plain-error analysis requires the error to be obvious or clear, this court finds that Defendant-Appellant has failed to show plain error.

The court does not find the Government's cross-examination on gang affiliation improper or prejudicial. Thus, the court finds no prosecutorial misconduct.

### C. Cumulative Effect of Errors

Defendant argues that the cumulative effects of ineffective assistance of counsel and the Government's improper conduct created a fundamentally unfair trial setting. The district court rejected such argument in denying Defendant's Motion for New Trial, holding that such analysis was inapplicable because there were no errors, as required for there to have been a cumulative

effect. This court reaches the same conclusion on direct appeal on the issue and, likewise, finds no abuse of discretion by the district court.

To warrant reversal based on a cumulative effect of errors argument, the appellant "must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004). The court will only look at the effect of errors and will not consider the cumulative effect of non-errors. *Id.* The cumulative effect of errors analysis is irrelevant where no individual ruling was erroneous. *United States v. Dietz*, 577 F.3d 672, 697 (6th Cir. 2009). Because this court finds that none of the district court's individual rulings were erroneous, the cumulative effect analysis is inapplicable here.

**D. Denial of Motion for New Trial Based on Great Weight of the Evidence**

This court reviews a district court's denial of a motion for new trial for abuse of discretion. *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988). Defendant argues that the district court abused its discretion in denying his Motion for New Trial because "the verdict was against the great weight of the evidence." (Appellant's Br. at 40.) Specifically, Defendant argues that Officer Smith's testimony was unreliable and contradicted by the testimony of Defendant and Vanderlaan. When reviewing a district court's denial of a motion for a new trial based on an argument for insufficient evidence, this court does not reweigh the evidence or reassess the credibility of the witnesses, but instead, reviews the district court's determination that the evidence did not "preponderate heavily against the verdict." *Ashworth*, 836 F.2d at 266 (internal quotation marks omitted). In this Circuit, "[a]n abuse of discretion exists only when the reviewing court is firmly convinced that a mistake has been made." *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993).

15

Here, the district court did not abuse its discretion. The district court properly weighed the evidence and assessed the credibility of witnesses to ensure that there was no miscarriage of justice. The district court assessed the credibility of Officer Smith and determined that his account of events was sufficient to create a question of fact for the jury to determine. Further, the district court considered the weight of testimony by Defendant, Vanderlaan, and Ortiz and determined that "it was not overwhelming." Appellant's argument in favor of reversal merely contests the credibility of the witnesses and the weight that Officer Smith's testimony should have been given. Such is exactly the type of rehashing that this court does not conduct on review.

Thus, this court finds that the district court did not abuse its discretion by denying Defendant's Motion for New Trial based on the great weight of the evidence.

### E. Insufficient Evidence

This court reviews a motion to reverse a conviction for insufficiency of the evidence *de novo*. *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). This court must assess the evidence "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* This court must also "resolve all issues of credibility in favor of the factfinder's verdict." *United States v. Wade*, 318 F.3d 698, 701 (6th Cir. 2003) (quoting *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001)) (internal quotation marks and brackets omitted). Circumstantial evidence is given the same weight as direct evidence. *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991). Further, "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt."

*United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010) (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)).

Defendant was convicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Such offense requires showing of the following elements: "(1) the defendant had a previous felony conviction; (2) the defendant knowingly possessed the firearm specified in the indictment; and (3) the firearm traveled in or affected interstate commerce." *Campbell*, 549 F.3d at 374. Defendant conceded that he was a convict. Defendant argues that there was insufficient evidence at trial for a reasonable finder of fact to conclude that Defendant knowingly possessed the firearm or that the firearm affected interstate commerce. This court rejects both of Defendant's arguments.

First, there was sufficient evidence for the jury to find that Defendant knowingly possessed the gun. The "possession" element of 18 U.S.C. § 922(g)(1) is satisfied by either actual or constructive possession. *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014). While actual possession "requires that a defendant have immediate possession or control of the firearm," constructive possession still exists where the defendant does not have immediate possession of the firearm but "knowingly has the power and intention at a given time to exercise dominion and control over [the firearm], either directly or through others." *Id.* (quoting *Campbell*, 549 F.3d at 374) (internal quotation marks omitted). As detailed above, the Government provided enough circumstantial evidence for the jury to reasonably find beyond a reasonable doubt that Defendant had either actual or constructive possession of the gun. Officer Smith testified that he found the gun in the place where Defendant was seated prior to being removed from the car. This serves as circumstantial evidence allowing the reasonable inference by the jury that Defendant knew the gun was there and likely placed it there himself. Further, the

Government provided evidence that the gun that was found in Defendant's seat—a nine-millimeter handgun—did not match the type of gun—a .22 caliber handgun—or any of the ammunition that was found on Natale—.22 caliber bullets.

Second, the Government also provided sufficient evidence to show that the gun Defendant possessed affected interstate commerce. It is well-settled that proof that the firearm traveled through interstate commerce is sufficient to support the "affecting interstate commerce" element of 18 U.S.C. § 922(g)(1). *See Scarborough v. United States*, 431 U.S. 563, 575 (1977). At trial, Agent Miller testified that the firearm Defendant possessed was manufactured in Florida, not Michigan. If that testimony was deemed credible by the jury, it was reasonable for the jury to find that the firearm had traveled in interstate commerce, and thus, that element was satisfied.

Because this court finds there was sufficient evidence at trial for the jury to find the elements of 18 U.S.C. § 922(g)(1) beyond a reasonable doubt, we affirm Defendant's conviction and also find no abuse of discretion by the district court in denying Defendant's Motion for New Trial.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant-Appellant's judgment of conviction and the district court's denial of Defendant-Appellant's Motion for New Trial.